AT & T CORP.

v.

PAB, INC. and PAB Group, Inc. d/b/a/ PAB, Inc.

AT & T CORP.

v.

PUBLIC SERVICES ENTERPRISES OF PENNSYLVANIA, INC.

Civ. A. Nos. 96–80, 96–81.

United States District Court, E.D. Pennsylvania.

July 25, 1996.

---

David H. Pittinsky, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, Frederick L. Whitmer, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, Florham Park, NJ, for Plaintiff AT & T Corp.

Maura E. Fay, Mark J. Levin, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, PA, Richard C. Yeskoo, Thomas T. Tamlyn, Jr., Fabricant and Yeskoo, New York City, for defendant Public Services Enterprises of Pennsylvania, Inc.

### *MEMORANDUM*

PADOVA, District Judge.

This is a consolidated action by AT & T to collect contract damages allegedly arising out of its sale of long distance telephone services to Public Services Enterprises of Pennsylvania ("PSE") and PAB Group ("PAB") (collectively "Defendants"). Currently before the Court is Defendants' joint motion to refer the case to the Federal Communications Com-

mission ("FCC") and/or to transfer the case to the United States District Court for the Southern District of New York. Pursuant to this Court's directive, Defendants filed Answers and Counterclaims, and Plaintiff filed its Reply. Oral argument was held on May 22, 1996, and the matter is now ripe for disposition. For the reasons that follow, Defendants' motion will be granted in part and denied in part.

## I. BACKGROUND

AT & T is a New York corporation with its principal place of business in New York. Defendants are both Pennsylvania corporations with their principal places of business in Pennsylvania. AT & T is a provider of long distance telephone services. Defendants are "switchless resellers" of long distance services. Defendants do not have physical facilities. Rather, they purchase large quantities of telephone services from AT & T at bulk (reduced) rates. Defendants then resell the services to smaller businesses that do not use sufficient quantities of telephone services to warrant the bulk discount. Defendants are, in essence, in direct competition with AT & T for the sale of long distance services. The FCC requires AT & T, and other long distance carriers, to permit unlimited resale of their long distance services.

AT & T sells bulk long distance services by means of schedules of rate and contract conditions known as "tariffs" or "contract tariffs." Tariffs include descriptions of classifications, regulations, and practices which may affect rates. *Phonetele, Inc. v. American Tel. & Tel. Co.,* 664 F.2d 716, 721 (9th Cir. 1981), *cert. denied,* 459 U.S. 1145, 103 S.Ct. 785, 74 L.Ed.2d 992 (1983). AT & T, as are all common carriers, is required to file such tariffs with the FCC for public display. 47 U.S.C.A. § 203(a) (West 1991); *Richman Bros. Records, Inc. v. U.S. Sprint Communications Co.,* 953 F.2d 1431, 1435 (3d Cir. 1991), *cert. denied,* 505 U.S. 1230, 112 S.Ct. 3056, 120 L.Ed.2d 921 (1992). AT & T must make the terms of its tariffs available to all similarly situated parties, including AT & T's competitors such as Defendants. Customers seeking to purchase services published in an AT & T tariff subscribe to particular "Plans" offered through the tariff.

Defendants obtained long distance services from AT & T by subscribing to AT & T's Customer Specific Term Plan IIs ("CSTP IIs" or "CSTP II Plans") offered pursuant to FCC Tariff No. 2 ("Tariff No. 2"). Under CSTP IIs, subscribers commit to the purchase of a large volume of telecommunications services over a certain period of time. If the subscriber fails to meet its usage revenue commitments over the contract period, it must pay the shortfall amount to AT & T.[1] These shortfall amounts are referred to hereinafter as "shortfall penalties."

In or about June 1994, PSE subscribed under CSTP IIs for telecommunications services with total annual revenue commitments of $88,650,000.00. These subscriptions were made pursuant to CSTP II Plan reference numbers 908, 1073, 1488, 1862, 1938, 2936, 2985, and 2989. AT & T alleges that PSE failed to meet its revenue commitments under these plans in the amount of $79,574,221.28. Similarly, PAB subscribed under CSTP IIs for 800 services with a total annual revenue commitment of $3,000,000.00. This subscription was made pursuant to CSTP II Plan number 3128. AT & T alleges that PAB failed to meet its revenue commitment in the amount of $2,703,083.73. AT & T's consolidated lawsuit against PSE and PAB seeks recovery of these shortfall penalties.

## II. RELATED LITIGATION AND ADMINISTRATIVE PROCEEDINGS

According to AT & T, the two cases filed in this court and now consolidated are simple collection actions brought under the relevant provisions of the CSTP IIs and Tariff 2. Defendants, however, argue that these collection actions are part of a much larger dispute involving these Defendants and other switchless resellers of telecommunications services. Defendants and other switchless resellers have claims against AT & T pending before

---

1. For example, a subscriber may agree to purchase $2,000,000.00 worth of 800 service from AT & T for a period of three years. If the subscriber is unable to sell enough 800 services to meet its contract commitments, it is obligated to pay the difference directly to AT & T.

the FCC and the United States District Court for the Southern District of New York.

The crux of the underlying dispute is Defendants' allegation that AT & T has attempted to use the CSTP IIs to put its competitors (Defendants and other CSTP II subscribers) out of business. Defendants allege that by providing inferior service to CSTP II subscribers, and engaging in other intentional misconduct, AT & T forced the CSTP II Plans into shortfall. Thereafter, Defendants' allege, AT & T wrongfully prevented Defendants from "rolling over" older CSTP II Plans into newer more competitive plans, thereby ensuring that Defendants and other CSTP II subscribers would incur shortfall penalties on a scale large enough to put many of them out of business.

## A. FCC Proceedings

Defendants have brought several FCC proceedings against AT & T. These proceedings involve the interpretation and implementation of certain discontinuance provisions in AT & T's contract tariffs. These discontinuance provisions allow a subscriber to "roll-over" the unused revenue commitments from an old plan into a new plan without suffering shortfall penalties.[2] According to Defendants, the FCC proceedings stem from AT & T's refusal to allow Defendants to roll-over the unused revenue commitments from the CSTP II Plans listed above.[3] There are two FCC proceedings of

particular relevance—the "Contract Tariff 1081 Dispute" and the "Contract Tariff 1470 Dispute."

### 1. The Contract Tariff 1081 Dispute

PSE acquired CSTP II Plans 908, 1862, 1938 and 2985 from other resellers.[3] It was PSE's intention to use the discontinuance provisions from these plans to roll-over the unused revenue commitments into a new plan—Contract Tariff 1081. PSE alleges that after it had acquired the CSTP II Plans, but before it could implement the discontinuance provisions, AT & T amended the terms of Contract Tariff 1081 to impose significant penalties on parties that tried to use the roll-over provision.

Following several months of negotiation, PSE and AT & T entered into a settlement agreement whereby AT & T agreed to "grandfather" PSE's CSTP II Plans into the old rule. Defendants allege that AT & T then refused to honor that agreement, demanding payment of the unused revenue commitments (approximately $57 million).

On November 7, 1995, PSE filed a seven-count complaint with the FCC (hereinafter the "FCC Complaint") seeking to enforce the settlement agreement and alleging violations of §§ 201 and 203 of the Federal Communications Act ("FCA").[4] On January 4, 1996, AT & T brought the current action in this Court to collect the disputed shortfall penalties stemming from the unused revenue com-

---

2. PSE states that these roll-over provisions are crucial to its business. PSE purchases and aggregates contract tariffs from smaller resellers. In this way, PSE is able to obtain large volume discounts that the smaller resellers cannot. However, key to this system is the ability to roll-over the unused portion of non-competitive plans (e.g., plans whose prices are no longer competitive due to changing market conditions) into new more competitive plans.

3. These are some, but not all, of the Plans against which AT & T seeks recovery in the instant suit against PSE.

4. The FCC Complaint contains the following seven counts: (1) AT & T's breach of its settlement Agreement with PSE is an unjust and unreasonable practice in violation of § 201(b) of the Communications Act (Count I); (2) AT & T's assertion of an artificial and contrived shortfall and its related threats to discontinue service constitute unjust and unreasonable practices in violation of

§ 201(b) of the Communications Act (Count II); (3) AT & T's refusal to transfer and discontinue PSE's CSTP II Plans as required in Tariff No. 2 violates its obligations under § 203(c) of the Communications Act (Count III); (4) AT & T's refusal to transfer and discontinue PSE's CSTP II Plans as required by Contract Tariff 1081 violates § 203(c) of the Communications Act (Count IV); (5) AT & T's attempt to harm PSE by refusing to transfer and discontinue PSE's CSTP II Plans into Contract Tariff 1081 constitutes an unjust and unreasonable practice in violation of § 201(b) of the Communications Act (Count V); (6) AT & T's refusal to transfer and discontinue PSE's CSTP II Plans into Contract Tariff 1081 violates its common carrier obligations under § 201(a) of the Communications Act (Count VI); and (7) AT & T's conduct violates FCC policies requiring unrestricted resale and sharing (Count VII). Def.'s Mem. Ex. C at ii.

mitments of, among others, the 908, 1862, 1938, and 2985 Plans.

Defendants allege that a successful resolution of the FCC proceeding will negate AT & T's claims before this Court. AT & T argues that the enforcement of settlement agreements is traditionally a judicial function and is well within this Court's area of expertise.

### 2. The Contract Tariff 1470 Dispute

PSE and PAB sought to terminate their respective remaining CSTP II Plans[5] into AT & T's Contract Tariff 1470. AT & T interpreted the terms of Contract Tariff 1470 to require that the discontinuance of the prior Plan and the subscription of the new Plan occur "concurrently." AT & T further defined the term "subscription" as occurring when the customer orders service. AT & T used these contract interpretations to prevent Defendants from utilizing the discontinuance provisions of their Plans.

PSE sought FCC intervention and, on November 8, 1995, the FCC issued an advisory opinion rejecting AT & T's interpretation of the Contract Tariff 1470 provisions.

AT & T believes that this FCC proceeding is now closed because it has agreed to adhere to the FCC advisory opinion. Therefore, AT & T argues that the dispute is properly before this court. PSE argues that it must now follow up on the non-binding advisory opinion to acquire final FCC resolution of the issue. Once again, Defendants argue that a successful resolution of the FCC proceeding will moot AT & T's actions in this Court.

### B. Pending District Court Proceedings

In 1994, PSE filed suit against AT & T in the United States District Court for the Southern District of New York. According to Defendants, this is one of 14 reseller cases against AT & T currently pending in that court. The first of these cases (not PSE's) is scheduled for trial in November 1996. In its New York lawsuit, PSE alleges that AT & T engaged in actions designed to frustrate PSE's valid orders for Contract Tariffs and otherwise pursued a course of discriminatory

and unreasonable conduct intended to destroy switchless resellers such as Defendants. Because the FCA allows a customer to sue a common carrier in the District Court or in the FCC, but not both, the New York District Court case covers all of AT & T's alleged wrongful conduct not specifically pleaded before the FCC. 47 U.S.C.A. § 207 (West 1991).

### III. REFERRAL TO THE FCC—PRIMARY JURISDICTION

#### A. Standard of Review

 Defendants argue that this case should be referred to the FCC based on the doctrine of primary jurisdiction. The doctrine of primary jurisdiction allows a district court to transfer a matter otherwise within its original jurisdiction to an appropriate administrative agency. *United States v. Western Pac. R. Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956); *Consolidated Rail Corp. v. Certainteed Corp.*, 835 F.2d 474, 477 (3d Cir.1987).

> Primary jurisdiction applies when decision-making is divided between courts and administrative agencies. It calls for judicial abstention in cases where protection of the integrity of a regulatory scheme dictates primary resort to the agency which administers the scheme.
>
> Cases involving closely regulated enterprises such as utilities and railroads provided the first vehicles for application of primary jurisdiction. Some opinions ... based the doctrine in part on deference to purported agency expertise. It is now generally accepted, however, that the principal justification is the need for an orderly and sensible coordination of the work of agencies and courts.

*Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732, 736 (3d Cir.1983) (citations and internal quotations omitted). Four factors are generally used to determine if primary jurisdiction applies in a particular case:

1. Whether the question at issue is within the conventional experience of judges or whether it involves technical or poli-

---

**5.** That is, PSE's Plans numbered 1073, 1488, and 2989, and PAB's Plan number 3128. These are the remaining Plans that are the subject of the instant litigation.

cy considerations within the agency's particular field of expertise;

2. Whether the question at issue is particularly within the agency's discretion;

3. Whether there exists a substantial danger of inconsistent rulings;

4. Whether a prior application to the agency has been made.

*National Comm. Ass'n v. American Tel. & Tel.*, 46 F.3d 220, 222 (2d Cir.1995). Where primary jurisdiction is deemed to rest with the administrative agency, judicial proceedings are suspended and the matter referred to the agency for its views. *Consolidated Rail Corp.*, 835 F.2d at 477.

 The FCC is the expert regulatory agency on affairs relating to telecommunications carriers. *Unimat, Inc. v. MCI Telecommunications Corp.*, No. 92–cv–5941, 1992 WL 391421, at *2 (E.D.Pa. Dec. 16, 1992); *In re Long Distance Telecommunications Lit.*, 647 F.Supp. 78, 79 (E.D.Mich.1986). The FCC retains exclusive jurisdiction over interstate communication by wire or interstate transmission of energy by radio. 47 U.S.C.A. § 152(a); *New York Tel. Co. v. FCC*, 631 F.2d 1059, 1064–66 (2d Cir.1980); *AT & T v. The People's Network, Inc.*, No. 92–3100, slip op. at 13, 1993 WL 248165 (D.N.J. Mar. 31, 1993). Among other things, the FCC is charged with "the duty of prescribing just and reasonable charges, practices, classifications and regulations regarding such services, in the event those adopted by a carrier are found to be unreasonable or otherwise in violation of the FCA." *The People's Network, Inc.*, slip op. at 13 (quoting *In re Long Distance Telecommunication Lit.*, 612 F.Supp. 892, 897 (E.D.Mich.1985), *aff'd in part*, 831 F.2d 627 (6th Cir.1987)). Under the FCA, the FCC has the authority not only to determine the reasonableness of rates and practices, but also to grant relief to those victimized by unreasonable rates and practices. *Id.* at 14. District court claims requiring FCC expertise or uniformity and the establishment of national policy are consistently stayed pending the resolution of relevant issues before the FCC. *Id.*

## B. Discussion

### A. Agency Expertise/Policy Considerations

 Viewed in isolation, the questions presented in AT & T's Complaints are ones of simple contract and tariff enforcement; that is, the Court is called upon to determine whether Defendants are obligated to pay the shortfall penalties under the terms of the various CSTP II Plans, Contract Tariffs, and the settlement agreement. Contract and tariff enforcement is clearly within the scope of this Court's expertise and does not warrant referral. *See National Comm. Ass'n*, 46 F.3d at 223 (drawing distinction in context of primary jurisdiction between cases involving enforcement of tariffs as opposed to a challenge to the reasonableness of a tariff).

However, Defendants' affirmative defenses and counterclaims allege violations of the FCA, challenge the propriety and reasonableness of Plaintiff's tariff practices, and essentially reiterate Defendants' allegations of wrongful conduct set forth above. Despite Plaintiff's characterization of this case as a collection action, the issues this Court will be called upon to decide clearly go beyond mere contract interpretation.

 The FCC is best suited to determine the reasonableness of a carrier's tariff rates or practices. *See Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 304, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976); *MCI Telecommunications Corp. v. Ameri–Tel, Inc.*, 852 F.Supp. 659, 665 (N.D.Ill.1994). While it is not clear at this juncture whether the reasonableness of Plaintiff's tariff rates will be placed in issue, the Court will necessarily have to rule on the reasonableness of Plaintiff's tariff practices, particularly with regard to the roll-over provisions of the various CSTP II Plans and Contract Tariffs.

Determining the reasonableness of Plaintiff's tariff practices will require considerable expertise and an intimate knowledge of the telecommunications industry. The resolution of these matters may have policy implications that could impact on parties beyond the confines of this litigation. All of these factors militate in favor of referral to the FCC.

### B. Issues Within FCC Discretion

The "collection action" articulated in AT & T's Complaints is not within the FCC's sole discretion. Indeed, there is substantial precedent suggesting that, assuming there is no question as to the reasonableness of the tariffs or plans, the FCC will not entertain such a case.

Sections 206–209 of the Communications Act make a carrier liable to a customer for damages that result from the carrier's unlawful actions or omissions. This statutory scheme does not, however, constitute the Commission as a collection agent for carriers with respect to unpaid tariffed charges. In the normal situation, if a carrier has failed to pay the lawful charges for services or facilities obtained from another carrier, the recourse of the unpaid carrier is an action in contract to compel payment or a termination or disconnection of service until those charges have been paid.

*Long Distance/USA, Inc. v. The Bell Tel. Co. of Pennsylvania,* 7 F.C.C.R. 408, 412 (1992). *Accord, Beehive Tel., Inc. v. The Bell Operating Co.,* 10 F.C.C.R. 10562, 10569 (1995); *Tel–Central, Inc. v. United Tel. Co.,* 4 F.C.C.R. 8338, 8340–41 (1989); *Illinois Bell Tel. Co. v. American Tel. & Tel. Co.,* 4 F.C.C.R. 5268, 5270 (1989). Plaintiff's claims, being in the nature of an action to compel payment, militate against referral to the FCC.

However, as discussed *supra,* Defendant's Answer and Counterclaims raise issues that go beyond mere contract damages and which, while not within the sole discretion of the FCC, are well suited to that agencies' expertise.

### C. Danger of Inconsistent Rulings & Prior Application to the FCC

Because the final two criteria for primary jurisdiction are related, I will discuss them together. Of the two tariff disputes discussed above—the 1081 and 1470 disputes—only the 1081 dispute has clearly defined FCC proceedings currently underway.[6] The FCC Complaint, as described above, challenges AT & T's interpretation of the settlement agreement and alleges unreasonable practices in violation of the FCA. Defendants Answer and Counterclaims raise claims and issues that mirror those contained in the FCC Complaint. Thus, issues that may be dispositive of the instant case are squarely before the FCC, at least as to the Plans contained in the Tariff 1081 dispute.

The FCC Complaint was filed prior to the initiation of this case and resolution of Defendant's affirmative defenses and counterclaims presents a substantial risk of inconsistent rulings. These circumstances clearly weigh in favor of finding primary jurisdiction in the FCC.

### C. Conclusion

Despite Plaintiff's attempt to style its Complaint as a simple contract action, what is really at issue between these parties are the allegations that Plaintiff manipulated the CSTP II Plans and Contract Tariffs to its own advantage in an effort to harm its competitors and regain market share that it would otherwise have lost. The evaluation of these and other issues presented in the case cannot be divorced from the highly regulated and competitive industry in which these parties compete, and the eventual resolution of this dispute is likely to involve subtle and complex issues of telecommunications policy and practice that may well impact on parties outside the confines of this litigation. The FCC is quite adept at assessing matters such as these and is already considering many of the issues raised in this case in its review of the Contract Tariff 1081 dispute.

Weighing all of the factors articulated above, I conclude that it is appropriate for this Court to defer to the primary jurisdiction of the FCC and refer this matter to that agency. Because Plaintiff's underlying claims are collection actions that the FCC will not ordinarily entertain, the case will be placed in civil suspense to preserve any of AT & T's collection claims and remedies that may become appropriate in light of the FCC

---

**6.** At oral argument, Defendants indicated that subsequent to the institution of this suit, they had filed a formal complaint before the FCC based on the 1470 dispute. That Complaint is not part of the record before me and plays no part in my analysis.

decision. *See The People's Network Inc.,* slip op. at 39 (holding that stay of judicial proceedings, rather than dismissal, is appropriate under doctrine of primary jurisdiction where portion of relief sought in court action cannot be obtained before administrative agency); *accord Engelhardt v. Consolidated Rail Corp.,* 756 F.2d 1368, 1369 (2d Cir.1985). Either or both parties may petition to reactivate the case, if it is appropriate to do so, following the resolution of the FCC proceedings.

## IV. TRANSFER TO THE SOUTHERN DISTRICT OF NEW YORK

### A. Standard of Review

 In addition to referral to the FCC, Defendants seeks to transfer these cases to the United States District Court for the Southern District of New York pursuant to 28 U.S.C.A. § 1404(a). Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) is the appropriate statutory provision for transfer of an action when jurisdiction is proper in both the original and the requested forum. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 878 (3d Cir.1995). The parties in the instant cases do not dispute that jurisdiction is proper in both the Eastern District of Pennsylvania and the Southern District of New York. The moving party has the burden of establishing the need for the transfer. *Norwood v. Kirkpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955); *Jumara,* 55 F.3d at 879.

 In ruling on a § 1404(a) motion, the court need not limit its analysis to the three factors stated in § 1404(a)—convenience of the parties, convenience of witnesses, or the interest of justice—but should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara,* 55 F.3d at 879. In this analysis, the plaintiff's choice of venue should not be lightly disturbed. *Id.*

The United States Court of Appeals for the Third Circuit enumerated the following factors which the court should consider:

The private interests [include]: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of the books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

The public interests [include]: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations and internal quotations omitted).

### B. Discussion

 Defendants argue that the instant cases should be transferred to the Southern District of New York so that any claims remaining after the close of the FCC proceedings may be consolidated with Defendants' actions pending in that District. Defendants argue that the issues raised in the New York action provide a complete defense to AT & T's claims in this court. Therefore, transfer of the instant cases to New York would likely result in consolidation.

AT & T argues that its choice of forum is entitled to significant weight, and that transfer to New York will result in undue delay in the prosecution of its collection claims. AT & T also notes that the current forum is beneficial to Defendants as it is their home jurisdiction.

 Transfer is not warranted in this case. While not dispositive, Plaintiff's choice of forum is entitled to significant weight. *Jumara,* 55 F.3d at 879. Additionally, De-

fendants will not be prejudiced by proceeding in the Eastern District of Pennsylvania because both PAB and PSE are Pennsylvania corporations with their principal places of business in the Eastern District of Pennsylvania. Thus, Defendants' witnesses and documentary evidence will be accessible.

■■■ The principal benefit of transfer, as articulated by Defendants, is consolidation of this case with those currently pending in New York. The pendency of related litigation in another forum is a proper factor to consider in choice of venue questions. *See Codex v. Milgo Elec. Corp.*, 553 F.2d 735, 739 (1st Cir.), *cert. denied*, 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977); *Hill's Pet Prods. v. A.S.U., Inc.*, 808 F.Supp. 774 (D.Kan.1992); *Blanning v. Tisch*, 378 F.Supp. 1058, 1061 (E.D.Pa.1974). The simultaneous prosecution in two separate courts of cases relating to the same parties and issues may lead to a waste of time, energy, and money. *Hill's Pet Prods.*, 808 F.Supp. at 777 (quoting *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir.1965)). *See also Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26, 80 S.Ct. 1470, 1474, 4 L.Ed.2d 1540 (1960).

However, I am not convinced that allowing this case to remain in this Court would result in a waste of private or public resources. To the contrary, discovery and trial could be expedited in this Court while transfer and eventual consolidation in New York is likely to lead to protracted delay. Additionally, Defendants concede that not all of the cases pending in New York are presently before the same judge. *See* Tr. 5/22/96 at 31. Further, this Court is well equipped to address the issues of law that are likely to arise, and there is no suggestion that a jury of the Eastern District of Pennsylvania might harbor any prejudice as to the parties or issues presented.

### C. Conclusion

After weighing all of the relevant public and private considerations, I conclude that Defendants have not met their burden of demonstrating the need for transfer. This Court remains the appropriate forum for this case. Defendants' motion to transfer will therefore be denied.

An appropriate Order follows.

### *ORDER*

AND NOW, this 25th day of July, 1996, upon consideration of Defendants' Motion for Referral to the FCC and Transfer to the Southern District of New York (Doc. No. 9) Plaintiff's Response (Doc. No. 13) Defendants' Reply (Doc. No. 16) and Plaintiff's Sur–Reply (Doc. No. 18), and following oral argument on May 22, 1996, IT IS HEREBY ORDERED THAT Defendants' Motion is GRANTED IN PART and DENIED IN PART as follows:

1. That portion of Defendant's Motion seeking referral to the Federal Communications Commission is GRANTED and this consolidated case is referred to the Federal Communications Commission;

2. That portion of Defendants' Motion seeking to transfer this consolidated case to the United States District Court for the Southern District of New York is DENIED;

3. The Clerk of the Court shall place this consolidated case in CIVIL SUSPENSE;

4. This consolidated case shall remain in civil suspense until resolution of the proceedings before the Federal Communications Commission or until otherwise ordered re-activated by the Court.