Curt HIMMELMAN, Plaintiff,

v.

MCI COMMUNICATIONS
CORPORATION,
Defendant.

No. CIV.A. 99–1705 RMU.

United States District Court,
District of Columbia.

Feb. 10, 2000.

Andrew N. Friedman, Cohen, Milstein, Hausfeld & Toll, PLLC, Washington, D.C., Liaison Counsel for plaintiff, Curt Himmelman.

Joshua N. Rubin, Abbey, Gardey & Squitieri, LLP, New York, NY, Co–Counsel for the plaintiff, Curt Himmelman.

Jeffrey M. Gottlieb, Berger & Gottlieb, New York, NY, Co–Counsel for plaintiff, Curt Himmelman.

Benjamin S. Boyd, Piper & Marbury L.L.P., Washington, D.C., Co–Counsel for defendant, MCI Communications Corporation.

Charles P. Scheeler, Piper & Marbury L.L.P., Baltimore, MD, Co–Counsel for defendant, MCI Communications Corporation.

Thomas F. O'Neil, III, MCI WorldCom, Inc., Washington, D.C., In-house counsel for defendant, MCI Communications Corporation.

### *MEMORANDUM OPINION*

**Granting the Defendant's Motion to Dismiss without Prejudice Pursuant to the Doctrine of Primary Jurisdiction**

URBINA, District Judge.

### I. INTRODUCTION

This purported class action is before the court upon the defendant's motion to dis-

miss pursuant to the doctrine of primary jurisdiction, among other grounds. For the reasons which follow, the court will grant the motion and dismiss the amended complaint without prejudice.

## II. BACKGROUND

The plaintiff, Curt Himmelman, is a New Jersey resident who subscribes to telephone service provided by the defendant, MCI Communications Corporation ("MCI"). *See* Compl. ¶ 4. MCI is a telecommunications corporation that maintains its executive offices and national headquarters in Washington, D.C. *Id.* ¶ 5.

The plaintiff initiated this putative class action against MCI by filing a complaint in the Superior Court of the District of Columbia, Civil Division, *see* Compl. ¶ 3, but MCI removed the case to this court. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), the plaintiff's amended complaint proposes to litigate on behalf of a class consisting of all persons who have used MCI's directory-assistance service, with the exception of MCI employees, from August 13, 1993 through and including the date that MCI ends the practices complained of.[1]

The complaint alleges that MCI has violated and continues to violate the tariffs it has filed with the Federal Communications Commission ("FCC") pursuant to the Federal Communications Act of 1934, 47 U.S.C. § 1515 *et seq.*, as amended ("the Act"). Specifically, FCC Tariffs require MCI to provide up to two requests for listings within the area code dialed on each call to Directory Assistance. For each such call, the FCC Tariffs permit MCI to charge $1.40. FCC Tariff No. 1, 4th Revised Page No. 18.12 section C.3, effective March 1, 1999, provides, in pertinent part:

.02117 *Directory Assistance* * * *

.021171 For customers who access Directory Assistance by dialing Area Code + 555-1212, an undiscountable charge of $1.40 per call will be applied to each call requesting Directory Assistance for numbers in the U.S. mainland .... * * * *The Directory Assistance Operator will search for up to two numbers per call.*

Mot. to Dis., Ex. 1 (emphasis added). The plaintiff does not challenge the provisions of these tariffs, including the rate of $1.40 per directory assistance call. *See* Compl. ¶¶ 2, 15. Rather, the plaintiff alleges that "MCI, by means of manipulative, unfair and deceptive acts, prevents, hinders and impedes its customers from availing themselves" of their right to request a second telephone number during the same call to directory assistance. *See* Compl. ¶¶ 2, 14. In order to spare itself time and expense, the plaintiff charges, MCI responds to directory-assistance calls with the questions, "For what city, please?" and "What listing?" *See* Compl. ¶ 16. Each of these questions unfairly misleads the customer into believing that he will have an opportunity to request a second number after he receives a response to his first request. *See* Compl. ¶ 17. Moreover, MCI never affords the customer an opportunity to request a second number. *Id.* Lastly, the plaintiff charges that MCI refuses to provide a credit to customers who learn that they are entitled to two numbers per call and who would request a second number if not prevented from doing so by MCI's manipulative procedures. *See* Compl. ¶ 20.

The plaintiff demands a jury trial and asserts six causes of action: **Count 1**, breach of contract, *see* Compl. ¶¶ 22–29; **Count 2**, violation of the D.C. Consumer Fraud Act, D.C.Code § 28–3901 *et seq.*, *see* Compl. ¶¶ 30–39; **Count 3**, common-law fraud, *see* Compl. ¶¶ 40–48; **Count 4**, negligent misrepresentation, *see* Compl. ¶¶ 49–58; **Count 5**, violation of the Federal Communications Act section 201(b), *see* Compl. ¶¶ 59–65; and **Count 6**, a request for injunctive relief, *see* Compl. ¶¶ 66–69.

---

1. The plaintiff filed a motion for class certification. At the request of the court, the plaintiff voluntarily withdrew the motion without prejudice, with the understanding that he would be permitted to refile the motion if the instant motion to dismiss were denied.

Subsequently, MCI filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted, and pursuant to the doctrine of primary jurisdiction. For the reasons which follow, the court will dismiss the amended complaint, without prejudice, pursuant to the doctrine of primary jurisdiction. Accordingly, the court declines to reach the other grounds for dismissal asserted in the defendant MCI's motion to dismiss.

## III. DISCUSSION

### A. Legal Standard for Motion to Dismiss under Rule 12(b)(6)

A motion to dismiss for failure to state a claim upon which relief can be granted tests not whether the plaintiff will prevail on the merits, but instead whether or not he has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Fed. R.Civ.P. 12(b)(6). The court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Atchinson v. D.C.*, 73 F.3d 418, 421 (D.C.Cir.1996). In deciding such a motion, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *See Maljack Prods. v. Motion Picture Ass'n*, 52 F.3d 373, 375 (D.C.Cir.1995). The court need not, however, accept as true the plaintiff's legal conclusions. *See Taylor v. F.D.I.C.*, 132 F.3d 753, 762 (D.C.Cir.1997). Nor need the court accept unsupported assertions, unwarranted inferences or sweeping legal conclusions cast in the form of factual allegations. *See Miree v. DeKalb County*, 433 U.S. 25, 27, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). The court may consider the allegations of the complaint, documents attached to or specifically referred to in the complaint, and matters of public record. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 at 299 (2d ed.1990).

### B. Whether this Court Should Defer to the FCC Pursuant to the Doctrine of Primary Jurisdiction

In addition to his nominally state-law causes of action, Mr. Himmelman contends that MCI's practices constitute an "unjust and unreasonable practice" within the meaning of the Federal Communications Act ("the FCA"). *See* Am. Compl. Count V. The FCA provides, in pertinent part, "All charges, practices, classifications and regulations for and in connection with [a] communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful." 47 U.S.C. § 201(b). The FCA creates a cause of action on behalf of any person who claims that he has been damaged by a common carrier, such as MCI. *See* 47 U.S.C. § 207. Such an aggrieved individual may elect to file a complaint with the FCC, or he may commence an action in any United States district court, but he may not pursue both remedies simultaneously. *See* 47 U.S.C. § 207; *Richman Brothers Records, Inc. v. U.S. Sprint Communications Co.*, 953 F.2d 1431, 1435–36 (3d Cir.1991).

MCI asks this court to dismiss Mr. Himmelman's amended complaint pursuant to the doctrine of primary jurisdiction "so that the FCC can determine whether the manner in which MCI ... provide[s] directory assistance services is just and reasonable." *See* Defendant MCI's Motion to Dismiss the Amended Complaint ("Mot. to Dis.") at 22.

The primary-jurisdiction doctrine originated with Mr. Justice White in *Texas & Pacific R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907). *See United States v. Radio Corp. of America*, 358 U.S. 334, 346, 79 S.Ct. 457, 3 L.Ed.2d 354 (1959). "Primary jurisdiction is invoked in situations where the

courts have jurisdiction over the claim from the very outset but it is likely that the case will require resolution of issues which, under a regulatory scheme, have been placed in the hands of an administrative body." *Total Telecommunications Services, Inc. v. AT & T*, 919 F.Supp. 472, 478 (D.D.C.1996) (quoting *Marshall v. El Paso Natural Gas Co.*, 874 F.2d 1373, 1376 (10th Cir.1989)). "The primary jurisdiction doctrine is premised on a desire for uniform outcomes and on the inherent advantage in allowing an agency, in this case the FCC, to apply its expert judgment to the issues in dispute."[2] *Total Telecommunications*, 919 F.Supp. at 478. Under the doctrine, a court should refer a matter to an administrative agency for resolution, "even if the matter is otherwise properly before the court, if it appears that the matter involves technical or policy considerations which are beyond the court's ordinary competence and within the agency's particular field of expertise." *MCI v. AT & T*, 496 F.2d 214, 220 (3d Cir.1974); *see also Allnet Communication Service, Inc. v. National Exchange Carrier Ass'n.*, 965 F.2d 1118, 1120 (D.C.Cir.1992) ("Expertise, of course, is not merely technical but extends to the policy judgments needed to implement an agency's mandate.").

■ Although there is no fixed formula for determining whether to apply the doctrine of primary jurisdiction, *see United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), the courts traditionally have considered four factors: (1) whether the question at issue is within the conventional expertise of judges; (2) whether the question at issue lies particularly within the agency's discretion or requires the exercise of agen-

cy expertise; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made. *Total Telecommunications*, 919 F.Supp. at 478; *AT & T v. MCI*, 837 F.Supp. 13, 16 (D.D.C.1993); *accord AT & T v. People's Network*, 1993 WL 248165 (D.N.J.1993).[3] The primary jurisdiction doctrine "may be applicable even if the questions raised in a case are within the ordinary experience of the judiciary." *Total Telecommunications*, 919 F.Supp. at 478; *accord MCI v. AT & T*, 496 F.2d 214, 223 (3d Cir.1974); *IPCO Safety Corp. v. WorldCom, Inc.*, 944 F.Supp. 352, 355–56 (D.N.J.1996).

■ As to the first of the four elements of primary jurisdiction, the doctrine emphasizes that the court should defer to the appropriate specialized agency in cases that require administrative expertise and raise "issues of fact not within the conventional experience of judges." *See Far East Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576 (1952). The courts have not hesitated, in appropriate cases, to defer to the expertise of administrative agencies such as the FCC. *See, e.g., MCI v. AT & T*, 496 F.2d 214, 220–21 (3d Cir.1974); *Carter v. AT & T*, 365 F.2d 486, 497–98 (5th Cir.1966); *Alltel Tennessee v. Tennessee Pub. Serv. Comm'n.*, 913 F.2d 305, 309–310 (6th Cir. 1990); *People's Telephone Coop. v. Southwestern Bell*, 399 F.Supp. 561 (E.D.Tex. 1975).

Broadly speaking, the FCC is the administrative agency that possesses the requisite specialized experience and expertise in the field of telecommunications. *See AT & T v. PAB, Inc.*, 935 F.Supp. 584, 590

---

**2.** The D.C. Circuit also recognizes a third rationale: "Although the doctrine of primary jurisdiction was originally rooted in the notion that agencies have greater expertise, experience, and flexibility than courts in dealing with regulatory matters, ... as well as in a desire for uniform application of the law ... abstention in favor of agencies ... also promotes the proper relationships between courts and administrative agencies." *Ayuda,*

*Inc. v. Thornburgh*, 880 F.2d 1325, 1344 (D.C.Cir.1989) (citation omitted).

**3.** The First Circuit also considers "whether the agency determination would materially aid the court." *New England Legal Found. v. Massachusetts Port Auth.*, 883 F.2d 157, 172 (1st Cir.1989).

(E.D.Pa.1996). "[T]here is no doubt that a determination of the reasonableness or discriminatory nature of common carrier rules and charges is squarely at the heart of the FCC's mandate . . . ." *Ambassador v. United States,* 325 U.S. 317, 324, 65 S.Ct. 1151, 89 L.Ed. 1637 (1945); *accord National Communications Ass'n v. AT & T,* 46 F.3d 220, 223 (2d Cir.1995); *In re Long Distance Telecomm. Lit.,* 831 F.2d 627, 632 (6th Cir.1987); *MCI v. Ameri-Tel, Inc.,* 852 F.Supp. 659, 665 (N.D.Ill. 1994). *Sprint Corp. v. Evans,* 846 F.Supp. 1497, 1508 (M.D.Ala.1994). Indeed, the FCC was created by Congress specifically to enforce the provisions of the Communications Act of 1934. *See AT & T v. IMR Capital Corp.,* 888 F.Supp. 221, 224 (D.Mass.1995).

Nor is the FCC's authority and expertise limited to the evaluation of rates. Rather, "[i]ts supervisory powers extend to a carrier's 'charges, practices, classifications and regulations.'" *Total Telecommunications,* 919 F.Supp. at 478 (citing 47 U.S.C. § 201(b)). Of course, the FCC's evaluation of carriers' charges and practices is not merely advisory: "The FCC has the authority not only to determine the reasonableness of rates and practices, but also to grant relief to those victimized by unreasonable rates and practices." *AT & T v. PAB, Inc.,* 935 F.Supp. 584, 590 (E.D.Pa.1996). "The Communications Act's prohibition of 'unreasonable', 'unjust' and 'discriminatory' practices is a content-less injunction, which essentially invites the FCC to promulgate specific policies governing the practices of the telecommunications industry." *AT & T v. IMR Capital Corp.,* 888 F.Supp. 221, 224 (D.Mass. 1995). If the FCC determines that the carriers' directory-assistance procedures are not reasonable and do not comport with the tariff, it may order specific changes in those procedures. *See* 47 U.S.C. § 205 ("the Commission is authorized and empowered to determine and prescribe . . . what . . . practice is or will be just, fair, and reasonable, to be thereafter followed . . . .").

Moreover, the *rationale* for the wide scope of the FCC's authority is material to the court's consideration of whether to defer to the agency in this case. As this court has observed, the "powers granted to the FCC are a reflection of Congress' intention that one government entity be vested with the responsibility of developing, coordinating and enforcing a uniform telecommunications policy." *Total Telecommunications,* 919 F.Supp. at 478; *accord AT & T v. Ameritech,* 1998 WL 325242, *3 (N.D.Ill.1998).

Consistent with this Congressional policy, the courts have routinely deferred to the FCC's unique expertise in disputes involving tariff interpretations. *See Nader v. Allegheny Airlines,* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976) (deference to agency is appropriate where an action otherwise within the court's jurisdiction "raises a question of the validity of a . . . practice included in a tariff filed with an agency"); *Ambassador, Inc. v. United States,* 325 U.S. 317, 324, 65 S.Ct. 1151, 89 L.Ed. 1637 (1945); *Allnet Communication Service, Inc. v. National Exchange Carrier Ass'n,* 965 F.2d 1118, 1120 (D.C.Cir. 1992). The court finds that Mr. Himmelman's disagreement with MCI constitutes just such a dispute. The Communications Act provides that carriers such as MCI may file tariffs with the FCC setting forth their charges and practices, *see* 47 U.S.C. § 203(a), and such tariffs define the terms and conditions upon which a carrier must provide interstate services. *See Western Union v. Esteve Brothers,* 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094 (1921); *MCI v. FCC,* 765 F.2d 1186, 1194–95 (D.C.Cir. 1985). The crux of the instant dispute is whether MCI has acted justly, reasonably and honestly in establishing procedures to effectuate the terms of its FCC directory-assistance tariff. Namely, Mr. Himmelman alleges that MCI has violated section 201(b) of the Act, which prohibits charges or practices that are "unjust or unreasonable." He alleges, *inter alia,* that MCI

interprets Tariff No. 1, 18.12 Section C3 unreasonably by failing to inform directory assistance callers at the beginning of the call that they are entitled to two numbers for the $1.40 they are charged.[4] In other words, Mr. Himmelman effectively argues that MCI's interpretation of its obligations under the tariff is unreasonable—i.e., he contends that the procedures MCI uses to implement the tariff are unjust and unreasonable.[5] This is significant, because "[t]he FCC has primary jurisdiction over claims that tariffs *and/or practices* are not just and reasonable." *Total Telecommunications,* 919 F.Supp. at 480 (emphasis added).

Moreover, the dispute between Mr. Himmelman and MCI is also fairly characterized as a dispute over tariff interpretation in a second respect. MCI contends that under its FCC directory-assistance tariff, the only customers who may recover in a billing dispute are those who give the carrier written notice of the dispute within six months of the issuance of the disputed invoice. *See* Mot. to Dis. at 25. MCI further argues that Mr. Himmelman's proposed class definition "is directly at odds with the Tariff," because the proposed class would include customers who failed to give MCI the required written notice.[6] *See* Mot. to Dis. at 25. Without expressing any opinion on the merit of MCI's argument on this score, the court notes that resolution of the instant dispute may require interpretation of the tariff on one of several points: whether the tariff actually contains the limitation as stated by MCI; whether the notice requirement applies to claims such as Mr. Himmelman's, i.e., whether his dispute is a "billing dispute"; and whether he adequately complied with the requirement of notice to the carrier.

This court has previously held that in addition to disputes over tariff interpretation, "[q]uestions involving standard industry practices should also be entertained by the FCC." *Total Telecommunications,* 919 F.Supp. at 480. This principle also militates in favor of deferring to the FCC as to the justness and reasonableness of MCI's procedures for implementing its FCC directory-assistance tariff. This is so because plaintiff's counsel has not contended that the directory-assistance practices complained of here are peculiar to MCI. Rather, plaintiff's counsel also filed an ac-

---

4. Mr. Himmelman's nominally state-law claims seek to enforce the same basic right as his claim under the Federal Communications Act—his rights under the directory-assistance tariff. The central claim in this case is that MCI has unreasonably and unjustly interpreted its directory-assistance tariff in violation of the Act, a claim that is squarely within the FCC's primary jurisdiction. The remaining claims "are fundamentally premised on the central claims; and are thus incidental in nature." *See Total Telecommunications Services, Inc. v. AT & T,* 919 F.Supp. 472, 483 (D.D.C.1996) (Urbina, J.) (citing *Far East Conference v. United States,* 342 U.S. 570, 577, 72 S.Ct. 492, 96 L.Ed. 576 (1952)). The breach-of-contract claim, for instance, alleges that MCI failed to live up to its obligations under its FCC tariffs, "which are incorporated into its service contracts with its customers . . . ." *See* Compl. ¶ 14.

As the D.C. Circuit held in another FCC primary-jurisdiction case, "The presence of additional, subordinate claims . . . . does not make primary jurisdiction any less suitable.

* * * [I]t would make little sense to refrain from applying primary jurisdiction merely because of an ancillary claim that we would reach only after examination of ones clearly within the agency's purview." *Allnet Communication Service v. National Exchange Carrier Ass'n.,* 965 F.2d 1118, 1121–22 (D.C.Cir. 1992) (affirming district court's dismissal pursuant to primary-jurisdiction doctrine).

5. *Cf. AT & T v. PAB, Inc.,* 935 F.Supp. 584, 590 (E.D.Pa.1996) (explaining its decision to defer to the FCC's primary jurisdiction, court reasoned, "While it is not clear at this juncture whether the reasonableness of Plaintiff's tariff *rates* will be placed in issue, the Court will necessarily have to rule on the reasonableness of Plaintiff's tariff *practices* . . . .") (emphasis added).

6. Mr. Himmelman purports to seek relief on behalf of a class consisting of "all persons who have used MCI's Area Code Directory Assistance . . . from the date exactly six years prior to the date of this Complaint . . . ." Compl. ¶ 6.

tion in the U.S. District Court for the District of New Jersey, alleging that another major telecommunications provider, AT & T, uses very similar practices to implement its FCC directory-assistance tariff. *See* Mot. to Dis., Ex. 4. As Mr. Himmelman says of MCI, the New Jersey plaintiffs allege that AT & T begins a directory-assistance call with the question "What city, please" followed by "What listing, please?" *See* Ex. 4 at ¶¶ 16–17. Again mirroring Mr. Himmelman's allegations against MCI, the New Jersey plaintiffs further allege that "AT & T provides no means for the customer to request an additional listing during that same call." *See* Ex. 4 at ¶ 18. *Cf.* Am. Compl. ¶¶ 16–17. Consequently, consumers have challenged the general industry practice for implementing the two-number-per-call tariff, not just a single carrier's own unique practice.

The fact that consumers have challenged carriers' interpretation of, and compliance with the directory-assistance tariff in more than one forum also poses the risk of inconsistent rulings by different courts, or by this court and the FCC. *See Nader v. Allegheny Airlines*, 426 U.S. 290, 303–304, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976) (one rationale for primary jurisdiction is to promote uniformity and consistency within each field of regulation). Neither the FCC nor any appellate court has had the opportunity to decide the reasonableness of the carriers' interpretation of what the directory-assistance tariff requires. *Contrast MCI v. Gorman, Wells*, 761 F.Supp. 124,

126 (S.D.Fla.1991) (court denied defendant's motion to refer matter for FCC to decide continuing viability of the filed-rate doctrine, since that question was "established" due to a recent Supreme Court decision). Deferring to the FCC here will enable the agency to write on a clean slate—providing a resolution which applies uniformly to all telecommunications carriers and consumers, with no unpredictability or variation from one district to another.

In short, the court has considered the factors essential to the primary-jurisdiction inquiry and concludes that they favor deference to the FCC. Under circumstances like those presented here, "It is hardly surprising that courts have frequently invoked primary jurisdiction in cases involving tariff interpretations ...." [7] *Total Telecommunications*, 919 F.Supp. at 480 (quoting *Allnet Communication Service*, 965 F.2d at 1120).[8]

The primary jurisdiction doctrine allows a district court to dismiss, or stay, an action over which it has subject-matter jurisdiction. *See Total Telecommunications*, 919 F.Supp. at 483; *AT & T*, 837 F.Supp. at 16; *accord Access Telecommunications v. Southwestern Bell Telephone Co.*, 137 F.3d 605, 608 (8th Cir.1998). In general, when primary jurisdiction lies with an administrative agency, this court will stay the proceedings in front of it rather than dismiss the suit. *See American Ass'n. of Cruise Passengers v. Cunard Line, Ltd.*, 31 F.3d 1184, 1187 (D.C.Cir. 1994).[9] "However, dismissal may be war-

7. *Cf.* the D.C. Circuit's observations in a case implicating the related context of administrative exhaustion, *Action for Children's Television v. FCC*, 59 F.3d 1249, 1257 (D.C.Cir. 1995) ("the present claim raises a question of first impression for the Commission, as is often the case as well where the doctrine of primary jurisdiction applies ..."); *id.* ("the novelty of the question of statutory interpretation is an additional reason that the court should allow the administrative process to run its course before taking the matter into its own hands.").

8. The court notes that the United States District Court for the District of New Jersey recently reached the same conclusion, deferring to the FCC with respect to a putative class action concerning the identical FCC tariff and similar state-law claims. *See Young Soon Oh v. AT & T Corp.*, 1999 WL 1128946 (D.N.J.1999).

9. The D.C. Circuit's decision in *Cruise Passengers* does not counsel against dismissing the instant action. There, in reversing the district court's dismissal of an antitrust action, the D.C. Circuit made observations not applicable to the present action, "[T]he [plaintiff-appel-

ranted in some cases, particularly where no party is prejudiced thereby." *Montgomery Environmental Coalition v. Washington Suburban Sanitary Commission,* 607 F.2d 378, 383 (D.C.Cir.1979) (affirming district court's decision to dismiss rather than stay pursuant to primary jurisdiction) (citing *United States v. Michigan National Corp.,* 419 U.S. 1, 4–5, 95 S.Ct. 10, 42 L.Ed.2d 1 (1974)); *see also Total Telecommunications,* 919 F.Supp. at 483 (dismissal is appropriate when "no useful purpose would ensure by the retention of jurisdiction"). This principle has been invoked by this court and other federal courts which have deferred to the primary jurisdiction of the FCC. *See, e.g., Total Telecommunications,* 919 F.Supp. at 483; *Citibank v. Graphic Scanning,* 618 F.2d 222, 224 (2d Cir.1980); *In re Long Distance Telecommunications Lit.,* 647 F.Supp. 78, 79 (E.D.Mich.1986) ("The court has previously dismissed seventeen similar lawsuits in deference to the Federal Communications Commission (FCC) under the doctrine of primary jurisdiction and finds such action appropriate in this case as well."); *Western Union Tel. Co. v. Graphic Scanning Corp.,* 360 F.Supp. 593, 596 (S.D.N.Y. 1973).

■ In the instant case, there is no reason to believe Mr. Himmelman cannot obtain adequate relief from the FCC.[10] As discussed above, the FCC is empowered to decide what carrier practices are "just and reasonable." *See* 47 U.S.C. §§ 201(b). Specifically, the FCC has the authority

and expertise to determine whether carriers' current procedures for implementing the directory-assistance tariff are unjust or unreasonable, and it can award relief on all Mr. Himmelman's claims if he establishes liability. *See* 47 U.S.C. § 207. For instance, the Federal Communications Act provides, in part,

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done [such as providing two numbers per call to directory assistance], such common carrier shall be liable to the person for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

47 U.S.C. § 206. The FCC has the authority to order a carrier to pay such damages and costs to the petitioner by a date certain. *See* 47 U.S.C. § 209.

■ Lastly, the court also has considered that its discretion to dismiss is appropriately exercised only where "the parties would not be unfairly disadvantaged ...." *See Reiter v. Cooper,* 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). Although the plaintiff has not raised the issue of the statute of limitations, this

---

lant] notes that a new suit filed against the cruise lines after the completion of proceedings before the [agency] might be barred by the Clayton Act statute of limitations. If so, then dismissal would have too harsh a consequence to impose upon the plaintiff ...." *Cruise Passengers,* 31 F.3d at 1187 (citing *Carnation Co. v. Pacific Westbound Conference,* 383 U.S. 213, 222–23, 86 S.Ct. 781, 15 L.Ed.2d 709 (1966) (dismissal under primary-jurisdiction doctrine is not appropriate if "dismissal would ... prejudice the plaintiff's right to obtain antitrust relief at the appropriate time")).

10. The plaintiff seems to suggest that the FCC would be an inadequate forum because it is either not authorized or not able to entertain a class action. The plaintiff does not directly make that contention, writing merely, "MCI does not contend that the FCC could entertain a class action." Opp. to Mot. to Dis. at 13. The plaintiff has not pointed to any authority which suggests that the FCC is unable to handle claims advanced on behalf of a putative class. Moreover, the court notes the decision in *In re Long Distance Telecomm. Lit.,* 647 F.Supp. 78 (E.D.Mich.1986), where a district court dismissed *a class action* out of deference to the FCC's primary jurisdiction.

court considers the issue *sua - sponte* to ensure that the plaintiff is not unduly prejudiced by dismissal. Because a dismissal pursuant to primary jurisdiction does not toll the statute of limitations, the court considered whether the plaintiff could be unfairly foreclosed from seeking relief in federal court after the FCC renders a decision on its claim against MCI. The court concludes that dismissal will not lead to a time bar on the plaintiff's ability to seek relief in federal court. This is so because following this dismissal, the plaintiff's next course of action regarding this tariff dispute will be to petition directly to the FCC. *See* 47 U.S.C. § 208(a). Then, the FCC will be statutorily obligated to investigate the complaint and issue an order within prescribed time periods. *See* 47 U.S.C. § 208(a), § 208(b)(1) and (2).[11] The FCC's order is then final and may be appealed. *See* 47 U.S.C. § 208(b)(3). If either Mr. Himmelman or MCI chooses to seek judicial review of the FCC's final order, it would do so under 47 U.S.C. § 402(a), which provides that appeals "shall be brought as provided by and in the manner prescribed in chapter 158 of title 28." Thus, a party aggrieved by the FCC's decision would file a petition for review in a court of appeals wherein venue lies, within sixty days after entry of the FCC's final order. *See* 28 U.S.C. § 2342(1) (jurisdiction of Court of Appeals); 28 U.S.C. § 2343 (venue); 28 U.S.C. § 2344 (sixty-day filing period).

Therefore, the statute of limitations applicable to the plaintiff's original action in this court will not be implicated, and the plaintiff will not be unfairly disadvantaged by dismissal.[12] *See Access Telecommunications v. Southwestern Bell,* 137 F.3d 605, 608 (8th Cir.1998) (district court did not err in deferring to FCC and dismissing rather than staying action pursuant to doctrine of primary jurisdiction).

## V. CONCLUSION

For the foregoing reasons, the court finds it is appropriate to defer to the FCC pursuant to the doctrine of primary jurisdiction. Accordingly, the amended complaint will be dismissed without prejudice.

An order directing the parties in a fashion consistent with this Memorandum Opinion was executed and issued on the 31st day of January, 2000. This Opinion is executed and issued on the 10th day of February, 2000.

11. If either party is dissatisfied with the speed of the agency's deliberations, he may seek relief under section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706, which authorizes the federal courts to "compel agency action unlawfully withheld or unreasonably delayed." *See* 589 F.Supp. 729, 732 n. 2. "[T]he solution to agency inaction lies with the court of appeals." *Bell Atlantic v. MFS Communications Co.,* 901 F.Supp. 835, 853 (D.Del.1995). As the Third Circuit has reasoned, "We think it is clear ... that the statutory commitment of review of FCC action to the Court of Appeals, read in conjunction with the All Writs Act, 28 U.S.C. § 1651(a), affords this court jurisdiction over claims of unreasonable Commission delay." *Telecommunications Research and Action Center,* 750 F.2d at 75.

12. The Supreme Court's decision in *Far East Conference v. United States,* 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952) is instructive on this score. There, the Court dismissed a suit by the United States seeking to enjoin an alleged violation of the Sherman Act because the United States had not resorted to the Maritime Board in the first instance. The Court held that the district court did not err in dismissing, rather than staying the case. Justice Frankfurter's opinion focused on three factors: (1) the dispute at issue was squarely within the scope of the agency's jurisdiction; (2) *direct review of the agency's decision was available in the U.S. Court of Appeals;* (3) a similar suit could be filed at a later time, if appropriate. *See Far East Conference,* 342 U.S. at 576–77, 72 S.Ct. 492. The D.C. Circuit relied on *Far East Conference* in concluding that this court was right to dismiss, rather than stay, an action out of deference to the EPA's primary jurisdiction: "The parallels to the instant case are obvious." *Montgomery Environmental Coalition,* 607 F.2d at 383 n. 18.