**IPCO SAFETY CORP., Plaintiff,**

v.

**WORLDCOM, INC., d/b/a LDDS Metromedia Communications, Defendant.**

**Civil Action No. 96–1222.**

United States District Court, D. New Jersey.

Oct. 18, 1996.

---

## OPINION

ORLOFSKY, District Judge:

Defendant, WorldCom, Inc., d/b/a LDDS Metromedia Communications ("WorldCom"),[1] has moved to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, to refer this action to the Federal Communications Commission ("FCC") and for a stay of the action in this Court, pending the FCC's resolution of this matter.

WorldCom's motion requires this Court to examine the parameters of the "doctrine of primary jurisdiction," in the context of whether this Court should refer to the FCC the issue of whether, and to what extent, WorldCom's Tariff F.C.C. No. 2 filed with the FCC limits its liability to the Plaintiff.

For the reasons set forth below, the Court will grant Defendant's motion to refer to the FCC the question of whether, and to what extent, Defendant's Tariff F.C.C. No. 2 limits its liability to Plaintiff, and stay all proceedings in this Court pending the FCC's resolution of this issue. Accordingly, Defendant's motion to dismiss Plaintiff's complaint will be dismissed without prejudice.

1. Plaintiff is also referred to as "LDDS" in the papers submitted by the parties in support of, and in opposition to Defendant's motion.

## I. Facts and Procedural Background

On March 11, 1996, Plaintiff, IPCO Safety Corporation ("IPCO"), filed a complaint in this Court against Defendant, WorldCom. This Court is vested with subject matter jurisdiction pursuant to 28 U.S.C. § 1332, based upon diversity of citizenship and alleged damages in excess of fifty thousand dollars, exclusive of interest and costs.

The relevant facts as set forth in Plaintiff's complaint are as follows. IPCO is a safety product sales and distribution company that employs more than thirty employees. Complaint ¶ 6. Plaintiff sells safety products, such as hard hats, exclusively through the use of telemarketing. *Id.* ¶ 6.

On January 11, 1995, IPCO entered into an agreement with Defendant, WorldCom, a telecommunications company, for the provision of long distance services for its general business operations and its telemarketing sales force. Complaint ¶¶ 7–9. Under this agreement, WorldCom was to provide IPCO with long distance services for its in-coming and out-going sales communications and all other long distance services required by IPCO. *Id.* ¶ 10.

On March 24, 1995, IPCO left its previous long distance provider and transferred to WorldCom for the provision of its long distance services. *Id.* ¶ 11. IPCO contends, however, that the WorldCom system never functioned properly for it, and that for the week following the transfer to WorldCom, its "entire business ground to a halt because it was unable to make or receive long distance phone calls except at certain times and with no predictable reliability." *Id.* at ¶ 12.

IPCO contends that because the WorldCom system never functioned properly, WorldCom breached its agreement with it. *Id.* ¶ 14. IPCO asserts that as a result of WorldCom's alleged breach, it was "forced to seek another long distance provider and eventually entered into another agreement with Sprint under much less favorable terms than it was to have had under the [WorldCom] agreement." *Id.* ¶ 13. IPCO claims to have suffered the following damages as a result of WorldCom's alleged breach:

(a) Virtually the entire sales force of IPCO was idled for the majority of the time that WorldCom was to have been providing long distance services to IPCO;

(b) IPCO lost a significant number of accounts both from its inability to make outgoing solicitation calls and from its inability to receive in-coming telephone orders;

(c) Some customers who had extreme difficulty communicating with IPCO during the week that WorldCom was to have provided long distance service to IPCO were permanently lost;

(d) IPCO was forced to enter into a much less favorable telecommunications services agreement with another long distance provider because it was in dire need of a network that functioned properly and was no longer able to negotiate terms from a position of strength;

(e) Several IPCO employees, including but not limited to its Chairman Greg Shipman, were forced to spend 20–40 hours or more attempting to resolve the difficulties experienced with the WorldCom service;

(f) The reputation of IPCO in the industry has been damaged by the periodic inability to make and receive phone calls from regular and new clients during the week WorldCom was to have provided service.

*Id.* ¶ 14(a)–(f). IPCO requests that this Court enter judgment against WorldCom in an amount in excess of $50,000. *Id.*

WorldCom has now moved to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, to refer this action to the FCC, and stay the action in this Court pending the FCC's resolution of this matter.

## II. Discussion

In support of its motion to dismiss, WorldCom maintains that "[u]nder the 'filed tariff doctrine', the rights and liabilities of telecommunication carriers, such as WorldCom, toward customers such as IPCO, are governed by tariffs filed with the FCC pursuant to Section 203 of the Federal Communications

Act."[2] (Defendant's Memorandum at 6). WorldCom further contends that it cannot be liable to IPCO for any of the damages sought by IPCO in its complaint because "World-Com's Tariff F.C.C. No. 2, on file with the FCC, *explicitly* excludes all liability for consequential damages." (Defendant's Memorandum at 6) (emphasis in original).[3,4]

Accordingly, IPCO's ability to recover from WorldCom the damages it seeks in its complaint depends upon whether, and to what extent, WorldCom's Tariff F.C.C. No. 2 exonerates WorldCom from any obligation it might have otherwise had to pay IPCO the damages IPCO seeks in its complaint. Before this Court may address this issue of substantive law, it first must determine as a threshold matter, whether this Court, or the FCC, is the proper forum for the resolution of this issue in the first instance.

### A. Doctrine of Primary Jurisdiction

■ Primary jurisdiction is a judicially created doctrine which "requires a court to transfer an issue within a case that involves expert administrative discretion to the federal administrative agency charged with exercising that discretion for initial decision." *Richman Bros. Records, Inc. v. U.S. Sprint Comm. Co.*, 953 F.2d 1431, 1435 n. 3 (3d Cir.1991), *cert. denied*, 505 U.S. 1230, 112 S.Ct. 3056, 120 L.Ed.2d 921 (1992). Under this doctrine, a district court refers "a matter otherwise within its original jurisdiction to an appropriate administrative agency." *American Tel. & Tel. Co. v. People's Network, Inc.*, No. 92–3100, 1993 WL 248165, *4 (D.N.J. March 31, 1993). A party's "filing of a suit in federal court, however, does not deprive [an agency] of primary jurisdiction." *Richman*,

953 F.2d at 1435. In other words, a "determination of [an] agency's primary jurisdiction involves a ... pragmatic evaluation of the advantages and disadvantages of allowing the agency to resolve the issue in the first instance." Kenneth Culp Davis and Richard J. Pierce, Jr., *Administrative Law Treatise*, vol. II, § 14.1 at 272 (3rd ed. 1994) (hereinafter "Davis").

■ As explained by the United States Supreme Court, the doctrine of primary jurisdiction is essentially:

a principle, now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over ... Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

*Unimat, Inc. v. MCI Telecommunications Corp.*, No. 92–5941, 1992 WL 391421, *2 (E.D.Pa. Dec. 16, 1992) (citing *Far East Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952)). Indeed, primary jurisdiction may be applicable even in cases where the questions raised "are within the ordinary experience of judiciary." *Total Telecommunications Services, Inc. v. American Tel. & Tel. Co.*, 919 F.Supp. 472, 478 (D.D.C.1996) (citing *MCI Comm. Corp. v.*

**2.** Section 203 of the Federal Communications Act, 47 U.S.C. § 203, provides in relevant part that:

Every common carrier, except connecting carriers, shall, within such reasonable time as the Commission shall designate, file with the Commission ... schedules showing all charges for itself ... and showing the classifications, practices, and regulations affecting such charges.

**3.** WorldCom's Tariff F.C.C. No. 2 (the "Tariff") provides, in relevant part, that "LDDS shall not be liable for any direct, indirect, consequential, special, actual, or punitive damages, or for any lost profits of any kind or nature whatsoever

arising out of any defects or any other cause." (Tariff, § 5.6, Boyle Cert.Ex.A).

**4.** Although the parties dispute whether the Tariff in force at the time of the parties' agreement or the Tariff in force at the time of the allegedly actionable conduct should control, it is immaterial which Tariff governs because the limitation of liability provisions of both versions of the Tariff are identical. (*Compare* Tariff, § 5.6, effective February 14, 1995, Boyle Cert. Ex. A, with Tariff, § 5.6, effective August 4, 1994, Boyle Reply Cert., Ex. A).

*American Tel. & Tel. Co.*, 496 F.2d 214, 223 (3d Cir.1974)).

■ The policies which underlie this doctrine include: the promotion of uniformity and consistency in the regulation of a business entrusted to a particular agency, the utilization of an agency's specialized knowledge and insight gained through experience, and the exercise of administrative discretion in affecting regulatory policy entrusted to an agency. *American Tel.*, 1993 WL 248165 at *4 (citing *Nader v. Allegheny Airlines, Inc.* 426 U.S. 290, 303–04, 96 S.Ct. 1978, 1986–87, 48 L.Ed.2d 643 (1976)).

■ In deciding whether to refer a particular issue to an appropriate administrative agency pursuant to the doctrine of primary jurisdiction, courts generally will consider several factors reflecting the underlying policies of the doctrine. Such factors include:

(1) whether the question at issue is within the conventional experience of judges; (2) whether the question at issue lies peculiarly within the agency's discretion or requires the exercise of agency expertise; (3) whether there exists a danger of inconsistent rulings disruptive of the statutory scheme; and (4) whether a prior application to the agency has been made.

*Id.* at *5. *See also Davis*, § 14.1 at 272 ("[t]here is no fixed formula for determining whether an agency has primary jurisdiction over a dispute or an issue raised in a dispute").

■ Numerous courts have referred to the FCC for resolution, pursuant to the doctrine of primary jurisdiction, issues which fall within the FCC's particular areas of expertise. The FCC is the "expert regulatory agency on affairs relating to telecommunications carriers." *Id.* at *5. In particular, the FCC is vested with the duty " 'of prescribing just and reasonable charges, practice, classifications and regulations regarding such services, in the event those adopted by a carrier are found to be unreasonable or otherwise in violation of the [FCA].' " *Id.* (citing *In re Long Distance Telecommunication Litigation*, 612 F.Supp. 892, 897 (E.D.Mich.1985), *aff'd in part and rev'd in part*, 831 F.2d 627 (6th Cir.1987)). The powers granted to the FCC "are a reflection of Congress' intention that one governmental entity be vested with the responsibility of developing, coordinating and enforcing a uniform telecommunications policy." *Total Telecommunications*, 919 F.Supp. at 478.

■ Under the Federal Communications Act ("FCA"), common carriers are required to file schedules, known as tariffs with the FCC. 47 U.S.C. § 203(a). *See also Richman*, 953 F.2d at 1435. Tariffs which are unreasonable or discriminatory are prohibited by the FCA. 47 U.S.C. §§ 201–202. *See Unimat*, 1992 WL 391421 at *2. Issues which "call into question the reasonableness of a carrier's rate charge or practice … are within the FCC's primary jurisdiction." *Id.* at *3. *See also MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1103–04 (3d Cir.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 64, 136 L.Ed.2d 25 (1996) (holding that issues which implicate the utility's tariff filed with the PUC are deemed to be within the primary jurisdiction of the PUC); *National Comm. Ass'n. Inc. v. American Tel. & Tel. Co.*, 46 F.3d 220, 223 (2d Cir.1995) ("statutory reasonableness should, of course be reviewed by an agency").

Issues relating to the validity, enforceability and scope of a limitation of liability clause contained within a tariff filed by a common carrier with the FCC have been found by several courts to be particularly appropriate candidates for referral to the FCC under the doctrine of primary jurisdiction. In *Richman*, for example, the district court referred to the FCC for resolution the issue of whether the limitation of liability clause contained within the defendant's tariff filed with the FCC precluded the plaintiff from recovering tort damages in excess of those prescribed in the clause. 953 F.2d at 1433.

Likewise, an issue relating to the validity and reasonableness of a limitation of liability clause contained within a tariff filed with the FCC was also referred to the FCC for resolution by the district court in *Total Telecommunications*, 919 F.Supp. 472. In referring the issue to the FCC, the district court noted that "[g]iven the concern for uniformity and expert judgment, it is hardly surprising that courts frequently invoke[ ] primary jurisdic-

tion in cases involving tariff interpretations." *Id.* at 480 (citing *Allnet Comm. Service, Inc. v. National Exch. Carrier Ass'n, Inc.,* 965 F.2d 1118, 1120 (D.C.Cir.1992)).

In the present case, in opposition to Defendant's motion to dismiss based upon the "filed tariff doctrine," Plaintiff presents a three-prong argument: first, Plaintiff contends that by virtue of the language contained in the parties' agreement, WorldCom's Tariff F.C.C. No. 2 does not apply to limit the damages it would otherwise be entitled to recover from WorldCom; second, Plaintiff argues that, even if the Tariff is applicable, most, if not all of the damages sought in its complaint are not precluded by the limitation of liability clause; and third, Plaintiff contends that, even if the damages it seeks would be precluded by the limitation of liability clause in the Tariff, exculpatory clauses in general, such as the limitation of liability clause are unreasonable and against public policy and should be declared void and unenforceable.

Accordingly, in order to rule on Defendant's motion to dismiss, this Court surely would need to ascertain the applicability, validity, enforceability and reasonableness of the limitation of liability clause contained in WorldCom's Tariff F.C.C. No. 2, a task which falls squarely within the set of tasks over which the FCC has expertise and primary jurisdiction, since "[t]he FCC has primary jurisdiction over claims that tariffs and/or practices are not just or reasonable." *Total Telecommunications,* 919 F.Supp. at 480. *See also Richman,* 953 F.2d at 1433.

In contrast to the contentions of Plaintiff, this case does not require this Court merely "to 'determine the meaning of words' ... which were used in their ordinary sense and to apply that meaning to the undisputed facts." (Plaintiff's Brief at 19) (citing *Shell Oil Co. v. Nelson Oil Co., Inc.,* 627 F.2d 228, 232 (Temp.Emer.Ct.App.1980), *cert. denied,* 449 U.S. 1022, 101 S.Ct. 590, 66 L.Ed.2d 484 (1980)). In *Shell,* the court held that it was not error for the district court not to refer the matter to the Department of Energy pursuant to the doctrine of primary jurisdiction. In that case, the only issue was whether the defendant violated a particular federal regulation. In contrast to the present case where the Plaintiff is challenging the validity of the Defendant's Tariff filed with the FCC, neither the validity, applicability, enforceability or reasonableness of the regulation, were at issue in *Shell. Id.* In fact, the *Shell* court expressly stated that the specialized expertise of the Department of Energy was not needed because "[t]here was no question involved as to the validity or the reasonableness of the regulations, but merely whether the regulations had been violated." *Id.* at 232.

Moreover, in the present case, a ruling by this Court on the validity and applicability of WorldCom's Tariff poses a risk of inconsistent interpretations of the common carrier's Tariff filed with the FCC. Such a ruling would impact the telecommunications industry far beyond the interests of the parties before this Court, as it may very well be industry practice for all telecommunications carriers to file such tariffs with the FCC. *See Total Telecommunications,* 919 F.Supp. at 480 ("[q]uestions involving standard industry practices should also be entertained by the FCC"). Hence, this Court's failure to defer to the primary jurisdiction of the FCC may well result in inconsistent judicial rulings regarding the same tariff throughout the country. In contrast, referral to the FCC will promote uniformity, efficiency and consistency in the interpretation of such tariffs. Indeed, I find that referral will further the goals and objectives of the FCC, FCA and the doctrine of primary jurisdiction.

Accordingly, this Court will refer to the FCC for resolution, the following issues: (1) whether the limitation of liability clause in the WorldCom's Tariff F.C.C. No. 2 is unreasonable and against public policy and should be declared void and unenforceable; (2) whether and to what extent WorldCom's Tariff F.C.C. No. 2 exonerates WorldCom from any obligation it might have otherwise had to pay IPCO the damages IPCO seeks in its complaint; (3) whether by virtue of the language contained in the parties' agreement, WorldCom's Tariff F.C.C. No. 2 does not apply to limit the damages Plaintiff would otherwise be entitled to recover from World-Com.

**358**

All further judicial proceedings in this case will be stayed pending the FCC's determination of these issues. In light of this Court's referral to the FCC, Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted will be dismissed without prejudice.[5]

This Court will enter an appropriate order.

### ORDER

This matter having come before the Court on the motion of Defendant to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, to refer the matter to the Federal Communications Commission ("FCC") for resolution and to stay the action in this Court pending the FCC's resolution of the matter, Daniel McCarthy, Esq., of Rogut, McCarthy & Bhend, and David G. Crocker, Esq., and Nicolette G. Hahn, of Early, Lennon, Peters & Crocker, P.C., appearing on behalf of the Plaintiff, and Joseph A. Boyle, Esq., and Douglas P. Lobel, Esq., of Kelley Drye & Warren, LLP, appearing on behalf of the Defendant; and,

The Court having considered the briefs and certifications filed in support of, and in opposition to the motion;

For the reasons set forth in this Court's Opinion filed concurrently with this Order;

IT IS HEREBY ORDERED on this 18th day of October, 1996, that the Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted is dismissed without prejudice; and,

IT IS FURTHER ORDERED that Defendant's motion to refer the matter to the FCC and for a stay of the action in this Court pending the FCC's resolution of the matter is granted; and,

IT IS FURTHER ORDERED that the following issues are referred to the FCC for resolution: (1) whether the limitation of liability clause in the WorldCom's Tariff F.C.C. No. 2 is unreasonable and against public policy and should be declared void and unen-

forceable; (2) whether and to what extent WorldCom's Tariff F.C.C. No. 2 exonerates WorldCom from any obligation it might have otherwise had to pay IPCO the damages IPCO seeks in its complaint; and (3) whether by virtue of the language contained in the parties' agreement, WorldCom's Tariff F.C.C. No. 2 does not apply to limit the damages Plaintiff would otherwise be entitled to recover from WorldCom; and,

IT IS FURTHER ORDERED that the Clerk of this Court shall prepare and send to the Managing Director of the Common Carrier Tariff Division of the FCC, located at 1919 M Street, N.W., Washington, DC 20554, a copy of the accompanying Opinion, this Order, docket entries and all pleadings filed in this Court. The FCC shall conduct and hold such hearings and proceedings as it deems appropriate to determine the issues referred by this Court; and,

IT IS FURTHER ORDERED that this action is stayed in this Court pending further order of this Court.

---

5. Indeed, to rule on Defendant's motion to dismiss would require this Court to engage in an analysis of the underlying merits of the case, thereby encroaching upon the primary jurisdiction of the FCC.