**Ellen LIPTON, Plaintiff,**

**v.**

**MCI WORLDCOM, INC. and MCI Telecommunications Corp., Defendants.**

**No. CIV. A. 00–795(RMU).**

United States District Court, District of Columbia.

March 5, 2001.

Lawrence Kendall Satterfield, Tracy Diana Rezvani, Finkelstein, Thompson, Loughran, Washington, DC, A. J. De Bartolomeo, pro hac vice, Gordon M. Fauth, Jr., pro hac vice, Robert S. Green, pro hac vice, Girard & Green, LLP, San Francisco, CA, Steven E. Goren, pro hac vice, Goren & Goren PC, Bingham Farms, MI, for plaintiff.

Robert J. Mathias, Piper, Marbury, Rudnick & Wolfe, LLP, Baltimore, MD, Bruce Todd Carton, Piper Marbury Rudnick & Wolfe, LLP, Reston, VA, for defendants.

### *MEMORANDUM OPINION*

URBINA, District Judge.

### Denying the Defendants' Motion to Dismiss

## I. INTRODUCTION

Ellen Lipton, a subscriber to MCI's long-distance telephone service, brings this proposed class action against MCI Worldcom, Inc. and MCI Telecommunications Corp. (collectively "the defendants" or "MCI"). Ms. Lipton, the putative class representative, alleges that MCI violated Section 203(c) of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 151 *et seq.*, by charging higher rates for her long-distance calls than were authorized under the appropriate tariff. The defendants have moved to dismiss Ms. Lipton's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The defendants argue that the "filed-tariff doctrine" bars the plaintiff's claims; that alternatively, the court should decline to hear the case under the primary-jurisdiction doctrine; and that the plaintiff lacks standing to assert the class claims set forth in her complaint. For the reasons that follow, the court will deny the defendants' motion to dismiss.

## II. BACKGROUND

MCI is the second-largest provider of residential long-distance telephone service in the United States. *See* Compl. ¶ 3. MCI engages in fierce competition with other carriers like AT & T, and offers competitive discounts to customers. *See id.* ¶ 9. One of these discounts is a rate plan called the MCI One Savings Plan II, which MCI refers to as the "5–10–25 Cent Plan." Under this plan, MCI promises customers rates of five cents per minute on Sundays, ten cents per minute on evenings and Saturdays, and twenty-five cents per minute during peak hours. *See id.* ¶ 10. This plan is filed in Tariff F.C.C. No. 1, 4th Revised Page No. 19.1.3.1.1.4.7., § C–3 (effective June 12, 1998).

Ellen Lipton, a resident of Huntington Woods, Michigan, was a "customer of record" of MCI's long-distance service from August 1998 to January 1999. *See* Compl. ¶ 6, 11. In August 1999, Ms. Lipton called MCI and requested that she be enrolled in the "5–10–25 Cent Plan." *See* Decl. of Ellen Lipton ("Lipton Decl.") ¶ 3. Apparently, at the time of the call, neither she nor the MCI representative referred to the plan by its name. Nevertheless, Ms. Lipton understood that based on "representations made by MCI … and … the terms of the plan," MCI would charge her a rate of 10 cents per minute on Saturdays and weekday evenings, and 5 cents per minute on Sundays. *See* Compl. ¶ 12. In September 1999, Ms. Lipton's statements began referring to these rates. *See* Compl. ¶ 5; Lipton Decl. ¶ 4.

Ms. Lipton contends that MCI charged her more than the 10 cent rate on weekday evenings and Saturdays, and more than the 25 cent rate at peak times. *See* Compl. ¶ 13. For example, on Saturday, August 8, 1998, Ms. Lipton placed 31 minutes of state-to-state calls. *See id.* ¶ 14. Instead of charging Ms. Lipton $3.10, or ten cents a minute for these calls, MCI charged her $5.28, or 17 cents a minute. *See id.* Based on these and other charges, Ms. Lipton alleges that MCI "charged, demanded, collected and received … compensation at rates greater than the charges specified in its Tariff" from her and others similarly situated, thereby violating the Federal Communications Act of 1934. *See* Compl. ¶ 30. Ms. Lipton seeks redress for the injury that she and other potential class members[1] have suffered in the form of damages, attorneys' fees, injunctive relief, and a declaratory judgment that MCI violated the Communications Act. *See id.* at 9.

## III. DISCUSSION

### A. Legal Standard

A Rule 12(b)(6) motion to dismiss tests not whether the plaintiff will prevail on the merits, but instead whether the complaint has properly stated a claim upon which relief may be granted. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the plaintiff's allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, in deciding such a motion, the court must accept as true all well-pleaded allegations of fact and draw all reasonable inferences in the plaintiff's favor. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683; *Moore v. Agency for Int'l Dev.,* 994 F.2d 874, 875 (D.C.Cir.1993). The court

---

1. By stipulation dated July 31, 2000, the parties agreed to postpone filing of the motion for class certification until sixty days after the court's ruling on MCI's motion to dismiss.

need not, however, accept the plaintiff's legal conclusions as true. *See Whitacre v. Davey,* 890 F.2d 1168, 1168 n. 1 (D.C.Cir. 1989), *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990).

## B. The Court Allows the Defendants' Supplemental Materials on a Motion to Dismiss

As a preliminary matter, the court will address the fact that MCI has attached copies of the plaintiff's phone bill and pages from the filed tariff to its Motion to Dismiss. The plaintiff contends that by submitting materials outside the pleadings, "MCI apparently seeks to convert its motion to one for summary judgment." *See* Opp'n at 6. When reviewing a motion under Rule 12(b)(6), "if matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED. R.CIV.P. 12(b). The plaintiff argues that under Rule 12(b), the court should not convert the defendants' motion to one for summary judgment because the defendants' evidence is "incomplete, or inconclusive" and does not resolve what the plaintiff sees as existing disputed issues of material fact. *See* Opp'n at 6.[2]

■■■■ In fact, the court may consider the defendants' supplementary material without converting the motion to dismiss into one for summary judgment. This court has held that "where a document is referred to in the complaint and is central

to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Vanover v. Hantman,* 77 F.Supp.2d 91, 98 (D.D.C. 1999) (citing *Greenberg v. Life Ins. Co. of Va.,* 177 F.3d 507, 514 (6th Cir.1999)). The court finds that the plaintiff's phone bill and MCI's filed tariff fall within this exception and may be considered without converting the motion into one for summary judgment. In addition, because the tariffs are public documents which MCI is required to file with the Federal Communications Commission ("FCC"), the court may take judicial notice of them pursuant to Federal Rule of Evidence 201, and as a result may consider them on a Rule 12(b)(6) motion even though they are not included in, or attached to the complaint. *See Marcus v. AT & T,* 938 F.Supp. 1158, 1164–65 (S.D.N.Y.1996), (citing *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773–74 (2d Cir.1991), *aff'd,* 138 F.3d 46 (2d Cir. 1998)).

It is important to note, however, that the parties dispute whether the documentary evidence that MCI has submitted relates to the actual plan in which the plaintiff was enrolled. As the plaintiff states, "MCI's factual submission does not prove as a matter of law that the billing plan proffered by MCI controls and that plaintiff was properly billed according to the plan proffered by MCI." Opp'n at 3. Thus, although the court will allow the attachment of the documentary materials to the defendants' motion to dismiss, the court will not assume that the tariffed plan submitted by MCI is the plan to which Ms. Lipton actually subscribed, particularly

---

**2.** As described by the plaintiff, MCI has submitted evidence describing three programs: "(1) the Friends & Family 'plan,' which is actually a discount option which applies on top of the customer's chosen rate plan; (2) an Execunet rate plan which MCI obviously selected from among its many rate plans because, in conjunction with the Friends & Family discount, it provides Peak and Off-Peak rates roughly approximating those charged Plaintiff; and (3) a 5–Cent 'Sunday Promotion' option." Opp'n at 3.

since, on a motion to dismiss, the court must construe all well-pleaded factual allegations in the plaintiff's favor.

### C. Analysis

#### a. The Filed–Tariff Doctrine Does Not Bar the Plaintiff's Claims

A description of the regulatory structure governing interstate telecommunications is necessary to frame the issues in this case. The Federal Communications Act of 1934, 47 U.S.C. § 151 *et seq.*, regulates interstate telecommunications carriers. As a provider of long distance telephone services, MCI is required to file "schedules" (or "tariffs") containing "all charges" and "the classifications, regulations, or practices affecting such charges, except as specified in such schedule." *See* 47 U.S.C. § 203(a). Section 203(c) of the Act makes it unlawful for carriers to provide communications services except pursuant to a filed tariff. *See id.* § 203(c). In addition, the Act prohibits carriers from unreasonably discriminating between customers in charges, practices, classifications, facilities or services. *See id.* § 202(a). To this end, the Act empowers the FCC to review filed rates, and to reject any rates it deems unjust, unfair, or unreasonable. *See id.* § 205(a).

These tariff-related provisions of the Communications Act are modeled after similar provisions of the Interstate Commerce Act ("ICA") and share the ICA's goal of preventing unreasonable and discriminatory charges. *See MCI Telecomm. Corp. v. AT & T Co.*, 512 U.S. 218, 229–30, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994). For this reason, the Supreme Court has held that "the century-old 'filed-rate doctrine' associated with the ICA tariff provisions applies to the Communications Act as well." *See AT & T v. Central Office Tel., Inc.*, 524 U.S. 214, 222, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998) Indeed, the "filed-rate" (or "filed-tariff") doctrine has been called the "central principle of the regulatory scheme for interstate telecommunications carriers." *See Fax Telecomm., Inc. v. AT & T*, 138 F.3d 479, 488 (2d Cir.1998). The doctrine "forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority." *Id.* (citing *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981)).

In *Louisville & Nashville R. Co. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 59 L.Ed. 853 (1915), the Supreme Court provided the classic statement of the filed-rate doctrine. In that case, the Court held that a passenger who purchased a train ticket at a rate misquoted by the ticket agent did not have a defense against the subsequent collection of the higher tariff rate by the railroad. The Court explained that:

> the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext.... [T]he carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

*Id.* at 97, 35 S.Ct. 494. Thus, even if a carrier intentionally misrepresents its rate and a customer relies on the misrepresentation, the carrier cannot be held to the promised rate if it conflicts with the published tariff. *See AT & T Co.*, 524 U.S. at 222, 118 S.Ct. 1956 (citing *Kansas City Southern R. Co. v. Carl*, 227 U.S. 639, 653, 33 S.Ct. 391, 57 L.Ed. 683 (1913)).

### i. The filed-tariff doctrine bars courts from hearing challenges to duly filed rates

 In addition, and of moment in this case, the filed-tariff doctrine bars courts from hearing any challenge to duly filed rates. *See, e.g., Montana–Dakota Utils. Co. v. Northwestern Pub. Serv. Co.,* 341 U.S. 246, 251–52, 71 S.Ct. 692, 95 L.Ed. 912 (1951) (holding that once a rate is filed with the appropriate agency, "except for review of the [agency's orders], the courts can assume no right to a different [rate] on that ground that, in its opinion, it is the only or the more reasonable [rate]"); *Fax Telecomm. Inc.,* 138 F.3d at 489 (by keeping courts out of the rate-making process, the filed-rate doctrine preserves the exclusive role of·federal agencies in approving telecommunications rates that are "reasonable"); *Marcus v. AT & T Corp.,* 138 F.3d 46, 61 (2d Cir.1998) (the filed tariff "is by definition reasonable unless and until the FCC, as the 'legislatively appointed regulatory bod[y] [with] institutional competence' says otherwise") (internal citations omitted); *Wegoland, Ltd. v. NYNEX Corp.,* 27 F.3d 17, 18 (2d Cir.1994) ("any filed rate is per se reasonable and unassailable in judicial proceedings"). This so-called "nonjusticiability strand" of the filed-rate doctrine recognizes that "(1) legislatively appointed regulatory bodies have institutional competence to address rate-making issues; (2) courts lack the competence to set utility rates; and (3) interference of courts in the rate-making process would subvert the authority of rate-setting bodies and undermine the regulatory regime." *Fax Telecomm, Inc.,* 138 F.3d at

489 (citing *Sun City Taxpayers' Ass'n v. Citizens Utils. Co.,* 45 F.3d 58, 62 (2d Cir.) (citation omitted), *cert. denied,* 514 U.S. 1064, 115 S.Ct. 1693, 131 L.Ed.2d 557 (1995)).

### ii. A claim that seeks to enforce a filed tariff may be brought in federal court

 On the other hand, a claim that seeks to *enforce* the tariff may be brought in federal court. In *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* the Supreme Court stated that "the duty to file rates with the Commission and the obligation to charge only those rates have always been considered essential to preventing price discrimination and stabilizing rates." *Maislin Indus.,* 497 U.S. 116, 126, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990) (citations omitted). Here, the plaintiff claims that MCI violated section 203(c) of the Communications Act by "charging, demanding, and collecting compensation under rates and conditions which are not set forth in its filed tariff." *See* Compl. ¶ 29. This statement is critical, for it demonstrates that the plaintiff is seeking enforcement of the rates duly filed in the tariff *as it stands.* The plaintiff is not, as the defendants urge, challenging the rates themselves. *See* Mot. to Dismiss at 7. Nor is the plaintiff making "a claim for excessive rates." Rather, she is claiming violation of the tariff itself. Indeed, as the plaintiff states, because her claims under 47 U.S.C. § 203 are brought under the filed-rate doctrine to enforce the tariffed rate, they cannot be barred by the filed-rate doctrine. *See* Opp'n at 11.[3]

---

**3.** In *Fax Telecommunications, Inc.,* the Second Circuit held that it could not directly enforce the rates that the plaintiff sought because those rates were not consistent with the CustomNet tariff pursuant to which the plaintiff received service. *See Fax Telecomm. Inc.,* 138 F.3d at 489. The court explained that if

it were to "enforce the promised rate and award damages on that basis, we would effectively be setting and applying a rate apart from that judged reasonable by the FCC, in violation of the nonjusticiability strand of the filed rate doctrine." *Id.* By contrast, in this matter, the plaintiff asks the court to enforce

The defendants insist that the plaintiff is actually challenging the defendant's "billing practices," as well as its "application of rates and conditions established in the tariff." *See* Mot. to Dismiss at 7. Quoting *AT & T v. Central Office Telephone*, 524 U.S. 214, 223, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998), the defendants state that rates "do not exist in isolation ... Any claim for excessive rates can be couched as a claim for inadequate services and vice versa." *See* Mot. to Dismiss at 8 (citation omitted). The defendants conclude that since "the filed tariff doctrine applies equally to claims relating to 'provisioning and services and *billing*,'" as well as duly filed rates, the plaintiff's claims are barred by the filed-rate doctrine. *See id.* The defendants, however, misapply *Central Office Telephone*. In that case, Central Office Telephone, a reseller of long-distance telephone services, sued AT & T, its provider, under state law for breach of a contract that "promised various service, provisioning, and billing options *in addition to those set forth in the tariff*." *See Central Office Tel.*, 524 U.S. at 220, 118 S.Ct. 1956 (emphasis added). The Court reasoned that the filed-tariff doctrine barred the plain-

tiff's state-law claims, not because they dealt with "rate, billing or service issues," as the defendants urge, but because the plaintiff sought "privileges not included in the tariff." *See id.* at 226, 118 S.Ct. 1956.[4]

In contrast to the *Central Office Telephone* case, the plaintiff here is not suing under state law to enforce an agreement outside the tariff. Nor is she seeking to alter the terms and conditions provided for in the tariff or to enforce an agreement to provide services on terms "different from those listed in the tariff." Instead, she challenges the defendant's compliance with the tariff itself. The court thus agrees with the plaintiff that the filed-tariff doctrine does not bar the plaintiff's claim.

**b. The Doctrine of Primary Jurisdiction Does not Require the Court to Refer this Matter to the FCC**

The defendants argue that the court should decline to hear the plaintiff's case under the doctrine of primary jurisdiction. Under this doctrine, a district court may refer a matter to an administrative agency on the ground that the agency

---

the tariffs under which she allegedly did receive service.

The defendants cite *Fax Telecommunications* for the correct proposition—that the "filed rate doctrine prevents an aggrieved customer from enforcing contract rights that contravene governing tariff provisions or from asserting estoppel against the carrier"—but in a manner that does not apply to this case. *See* Reply at 4 (citing *Fax Telecomm. Inc.*, 952 F.Supp. at 954). The defendants argue that the plaintiff seeks to enforce the filed rate under the Tariff for a plan that she wanted to be, but was not enrolled in. As set forth below, however, for the purposes of this motion to dismiss, the plaintiff has sufficiently alleged that she was enrolled in the plan whose rates she seeks to enforce. Significantly, she does not seek *deviation* from MCI's filed tariff, a claim that would be impermissible in this

forum. *See* Reply at 4 (citing *Delta Traffic Serv., Inc. v. Appco Paper & Plastics Corp.*, 931 F.2d 5, 7 (2d Cir.1991)).

4. Chief Justice Rehnquist, in his concurring opinion, explained that central to the anti-discriminatory policy embodied by the filed-rate doctrine "is the notion that all purchasers of services covered by the tariff will pay the same rate. The filed-rate doctrine furthers this policy by disallowing suits brought to enforce agreements to provide services on terms *different from those listed in the tariff*." *Id.* at 229, 118 S.Ct. 1956 (Rehnquist, C.J., concurring) (emphasis added). Significantly, Chief Justice Rehnquist acknowledged that "this is all the tariff governs." *See id.* In other words, "in order for the filed-rate doctrine to serve its purpose, therefore, it need pre-empt only those suits that seek to *alter* the terms and conditions provided for in the tariff." *Id.* (emphasis added).

is "best suited to make the initial decision on the issues in dispute, even though the district court has subject-matter jurisdiction." *See American Ass'n of Cruise Passengers v. Cunard Line, Ltd.*, 31 F.3d 1184, 1186 (D.C.Cir.1994) (citing *Allnet Communication Serv., Inc. v. Nat'l Exchange Carrier Ass'n, Inc.*, 965 F.2d 1118, 1120 (D.C.Cir.1992)). "Primary jurisdiction is invoked in situations where the courts have jurisdiction over the claim from the very outset but it is likely that the case will require resolution of issues which, under a regulatory scheme, have been placed in the hands of an administrative body." *Total Telecomm. Serv., Inc. v. AT & T*, 919 F.Supp. 472, 478 (D.D.C.) (Urbina, J.), *aff'd*, 99 F.3d 448, 1996 WL 590872 (D.C.Cir.1996) (quoting *Marshall v. El Paso Natural Gas Co.*, 874 F.2d 1373, 1376 (10th Cir.1989)). Primary jurisdiction does not require the court to dismiss the case, but merely to suspend the matter pending agency resolution. *See ·Marshall*, 874 F.2d at 1376–77 (citing *United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956)).

▮ Although there is no fixed formula for determining whether to apply the doctrine of primary jurisdiction, *see United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), courts have traditionally considered four factors: (1) whether the question at issue is within the conventional expertise of judges; (2) whether the question at issue lies particularly within the agency's discretion or requires the exercise of agency expertise; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made. *See Total Telecomm.*, 919 F.Supp. at 478. Applying these four factors to the instant case, the court determines that the primary-jurisdiction doctrine does not apply.

▮ As to the first of the four factors, the doctrine emphasizes that the court should defer to the appropriate agency in cases that require administrative expertise and raise "issues of fact not within the conventional experience of judges." *See Far East Conf. v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 96 L.Ed. 576 (1952). The defendants argue that the nature of the plaintiff's claim compels application of primary jurisdiction because this "is precisely the sort of billing dispute that is properly and routinely handled by the FCC." *See* Reply at 5. Were the court to "assume jurisdiction" here,[5] the defendants assert, it would have to "determine which unidentified portions of the Tariff's 'thousands of pages and scores of rate plans' apply to and establish the rates that Plaintiff claims she requested over the telephone from MCI" and engage in other inquiries properly conducted by the FCC. *See id.* (citations omitted).

The court's assessment of the issues in this matter leads it to a contrary conclusion. Although ·resolving this dispute may require the court to read and understand the tariff, the defendants have not demonstrated that this will pose any insurmountable technical or intellectual hurdles. As Judge Posner has observed, "[m]ost tariffs

---

**5.** The defendants suggest that if the primary-jurisdiction doctrine were to apply here, the court would not have jurisdiction. In fact, primary jurisdiction does not affect the court's authority or ability to exercise subject-matter jurisdiction in a particular dispute. Rather, the primary-jurisdiction doctrine allows the court to engage in a balancing of the "advantages and disadvantages of allowing the agency to resolve the issue in the first instance." *See IPCO Safety Corp. v. WorldCom, Inc.*, 944 F.Supp. 352, 355 (D.N.J.1996) (quoting Kenneth Culp Davis and Richard J. Pierce, Jr., Administrative Law Treatises, Vol. II, § 14.1 at 272) (3d ed.1994).

are a good deal less complex than patent licensing contracts, large-scale construction contracts, aircraft leases, executive employment contracts, long-term requirements contracts—and, for that matter, most insurance policies." *Baltimore & Ohio Chicago Terminal R.R. Co. v. Wisconsin Central Ltd.*, 154 F.3d 404, 411 (7th Cir.1998), *cert. denied*, 526 U.S. 1019, 119 S.Ct. 1254, 143 L.Ed.2d 351 (1999). In addition, the Southern District of New York has held that "claims that a tariff has been violated or unequally applied are properly brought before a court." *United States v. Pan Am. Mail Line, Inc.*, 359 F.Supp. 728, 732 (S.D.N.Y.1972). Accordingly, the court determines that this dispute lies well within its conventional expertise.

Under the second factor, the court must determine whether the issue lies particularly within the agency's discretion or requires the exercise of agency expertise. Broadly speaking, the FCC is the administrative agency that possesses the requisite specialized experience and expertise in the field of telecommunications. *See Himmelman v. MCI Communications Corp.*, 104 F.Supp.2d 1, 5 (D.D.C.2000) (Urbina, J.) (citing *AT & T v. PAB, Inc.*, 935 F.Supp. 584, 590 (E.D.Pa.1996)). "[T]here is no doubt that a determination of the reasonableness or discriminatory nature of common carrier rules and charges is squarely at the heart of the FCC's mandate." *Ambassador v. United States*, 325 U.S. 317, 324, 65 S.Ct. 1151, 89 L.Ed. 1637 (1945). "The FCC has the authority not only to determine the reasonableness of rates and practices, but also to grant relief to those victimized by unreasonable rates and practices." *PAB, Inc.*, 935 F.Supp. at 590.

These cases indicate that were the plaintiff challenging the reasonableness or discriminatory nature of MCI's rates, her dispute with MCI might be more appro-

priately heard by the FCC. But because the plaintiff does not challenge the reasonableness of MCI's tariffed rates or practices, her claims do not directly implicate the rate-making function of the FCC—the area "particularly within the agency's discretion." *See Telecom Int'l Am., Ltd. v. AT & T Corp.*, 67 F.Supp.2d 189, 217 (S.D.N.Y.1999) (determining reasonableness of rates is "province of the FCC"); *see also Himmelman*, 104 F.Supp.2d at 5 (court referred matter to FCC under primary jurisdiction doctrine where the "crux" of the dispute was "whether MCI has acted justly, reasonably and honestly in establishing procedures to effectuate the terms of its FCC directory-assistance tariff").

The third primary-jurisdiction factor instructs the court to consider whether there exists a substantial danger of inconsistent rulings. "The doctrine of primary jurisdiction is a flexible tool used to allocate 'business between court and agency', and should seldom be invoked unless a factual question requires both expert consideration and uniformity of resolution." *United States v. McDonnell Douglas Corp.*, 751 F.2d 220, 224 (8th Cir.1984) (citing *Locust Cartage Co. v. Transam. Freight Lines, Inc.*, 430 F.2d 334, 340 n. 5 (1st Cir.1970), *cert. denied*, 400 U.S. 964, 91 S.Ct. 365, 27 L.Ed.2d 383 (1970)). Insofar as the tariff is law, it is the law, applied to the facts of this case, that will dictate the outcome. There are no factual inquiries requiring the particular expertise of the administrative agency, and therefore no substantial danger of inconsistent rulings.

Finally, the court must consider whether a prior application has been made to the particular agency. There is no indication that the plaintiff made a prior application to the FCC. Accordingly, the court will decline the defendants' invitation to refer

this matter to the FCC under the doctrine of primary jurisdiction.

### c. The Plaintiff has Sufficiently Alleged Class Standing

MCI argues that the plaintiff has not alleged that she was a subscriber to the 5–10–25 Cent Plan, and therefore is not a member of the class on whose behalf she purports to sue. Contrary to MCI's argument, however, the plaintiff alleges that under the terms of the plan to which she subscribed, MCI committed itself to charging her long-distance rates of 5 cents per minute on Sundays, 10 cents per minute on Saturdays and weekday evenings, and 25 cents per minute at peak times. *See* Compl. ¶ 12. In fact, the plaintiff has submitted a Tariff that lists rates under a plan called the MCI One Savings Plan II, which is, according to the Tariff, "a variation of Option A (Execunet)." *See* Tariff F.C.C. No. 1, 4th Revised Page No. 19.1.3.1.1.4.7, § C–3.02521 (effective June 12, 1998). The rates in this Tariff correspond to the plan in which the plaintiff says she was enrolled, and are consistent with the legend on the plaintiff's phone bill.

MCI nevertheless insists that the plaintiff was enrolled not in the 5–10–25 Cent Plan, but instead in the "Friends & Family" Plan, with its own set of rates. *See* Mot. to Dismiss at 14. Specifically, MCI contends that "the long distance rate under Plaintiff's 'Friends and Family' plan for Saturdays and weekday evenings *does not* provide for a maximum rate of 10 cents per minute on Saturdays and weekday evenings. Rather, as set forth in the Tariff, the applicable long distance rate under the 'Friends and Family' plan for Saturdays and weekday evenings is 17 cents per minute, exactly what Plaintiff claims she was charged." *Id.* (emphasis in original).

The tariff itself belies MCI's claims. According to the tariff, the "Friends & Family Program" is different from a "plan," in that it is, as the plaintiff points out, "nothing more than a discount option which applies *in conjunction with* whatever primary plan the customer has selected." *See* Opp'n at 7 (emphasis added). The tariff itself states that "[f]or subscribers enrolled in a domestic Premier Calling Plan, if specific plan rates apply, the Friends & Family Discount will be applied to the call usage charges and surcharges as determined by these plan rates." Tariff F.C.C. No. 1, 31st Revised Page No. 19.1.3.1.1.5 § C–3.026121 (effective April 1, 1998) (Mot. to Dismiss, Ex. 2). Thus, the fact that the plaintiff was enrolled in the Friends and Family Program does not conclusively demonstrate that she was not also enrolled in the 5–10–25 Cent Plan.

Even if the defendants had raised a genuine factual dispute about the plan in which the plaintiff was enrolled, it would be premature at this stage, when the parties have not yet begun discovery, to accept MCI's factual proffers as dispositive. Case law under Rule 23 emphasizes that the plaintiff should be given an opportunity to conduct discovery to substantiate her class allegations. For example, in *Doninger v. Pacific N.W. Bell, Inc.*, 564 F.2d 1304, 1312 (9th Cir.1977), the court explained that "[t]he propriety of a class action cannot be determined in some cases without discovery, as for example where discovery is necessary to determine the existence of a class or a set of subclasses. To deny discovery in a case of that nature would be an abuse of discretion." Here, discovery is necessary to uncover the precise plan in the tariff under which the plaintiff was enrolled. *See* Opp'n at 10. Once discovery is complete, and the plaintiffs move for class certification, the defendants will have ample opportunity to op-

pose the plaintiff's standing as a member of the proposed class.

## IV. CONCLUSION

For the foregoing reasons, the court will deny the defendants' motion to dismiss. An appropriate order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously executed and issued this 5th day of March 2001.