Irene HOFFMAN, et al., Respondents,

v.

NORTHERN STATES POWER
COMPANY, d/b/a Xcel
Energy, Appellant.

No. A06–2275.

Court of Appeals of Minnesota.

Jan. 22, 2008.

Vincent J. Esades, Lori A. Johnson, Scott W. Carlson, Heins Mills & Olson, P.L.C., Minneapolis, MN, Charles S. Siegel (pro hac vice), Waters & Kraus, LLP, Dallas, TX, for respondents.

Timothy R. Thornton, Thomas J. Basting, Jr., Briggs and Morgan, P.A., Minneapolis, MN, for appellant.

Considered and decided by HALBROOKS, Presiding Judge; STONEBURNER, Judge; and MINGE, Judge.

## OPINION

HALBROOKS, Judge.

By certified question pursuant to Minn. R. Civ.App. P. 103.03(i), the district court asks (1) whether the filed-rate doctrine bars respondents' action and (2) whether the primary-jurisdiction doctrine requires the district court to defer resolution of the services required by the applicable tariffs to the responsible administrative agency. Because respondents' claim for damages, along with either specific performance or injunctive relief, amounts to an attack on tariffs filed with the appropriate regulatory entity, we answer the first certified question in the affirmative, reverse the district court's denial of a motion to dismiss on that ground, and remand to the district court for entry of judgment. Because our answer to the first certified question is dispositive, we do not reach the second certified question.

## FACTS

Appellant Northern States Power Company, d/b/a Xcel Energy (NSP), provides electrical service to customers located in Minnesota, North Dakota, and South Dakota. The relationship between NSP and its customers is regulated by tariffs authorized by the utility regulatory agencies of the three states. The tariffs set forth

the rates that NSP charges for services as well as the obligations of NSP and its customers to each other. All three states have identical tariffs.

In Minnesota, the legislature has established a comprehensive system for the regulation of utilities. Minn.Stat. §§ 216B.01–216B.82 (2006). Enforcement of the regulations prescribed therein is delegated to the Minnesota Public Utilities Commission (MPUC), which is charged with providing Minnesota consumers with reasonable energy rates. Minn. Stat. §§ 216B.01, 216B.08. All public utilities must file their rates, tolls, tariffs, and charges, along with all rules and contracts that will affect those rates, tolls, tariffs, and charges, with the MPUC. Minn.Stat. § 216B.05. The MPUC is charged with setting rates that are reasonable and are not prejudicial or discriminatory. Minn. Stat. § 216B.03.

On March 15, 2006, respondents Irene and David Hoffman, Jerry Ustanko, and Mulungeta Endayehu filed a complaint in district court, individually and "on behalf of all of [NSP's] residential electric customers in Minnesota, North Dakota and South Dakota." Respondents alleged that NSP violated its contractual obligation to maintain "points of connection" between its wires and its customers' homes.

According to respondents, NSP initially connects a customer to its system by affixing wires to lugs within the customer's meter box. After securing this connection, NSP installs a seal on the meter box to prevent access by the customer, a measure provided for in the tariffs. Respondents contend that over time, these connections can become corroded, loose, or both, causing a fire hazard. They argue that NSP is obligated under the tariffs to inspect and maintain its electrical wiring up through and including this connection point. The applicable tariffs provide:

The service conductors as installed by the Company from the distribution line to the point of connection with the customer's service entrance conductors will be the Company's property and will be maintained by the Company at its own expense.

The customer will provide for the safekeeping of the Company's meters. . . .

. . . .

ALL WIRING AND EQUIPMENT ON CUSTOMER'S SIDE OF THE POINT OF CONNECTION, EXCEPT METERING EQUIPMENT, WILL BE FURNISHED, INSTALLED, AND MAINTAINED AT THE CUSTOMER'S EXPENSE. . . .

(Emphasis added.) Respondents argue that they pay for maintenance of the points of connection through a "basic service charge" included in the monthly bill that they receive from NSP. They seek damages equal to the value of the inspections and maintenance that they claim are required and also seek either injunctive relief or specific performance requiring NSP to maintain the points of connection going forward.

On August 16, 2006, NSP moved for judgment on the pleadings, arguing that two principles of regulatory law, the filed-rate doctrine and the primary-jurisdiction doctrine, required the district court to decline jurisdiction over the case. The district court denied this motion on November 1, 2006. But on November 18, 2006, the district court certified two questions to this court: (1) whether the filed-rate doctrine bar respondents' claims and (2) whether the primary-jurisdiction doctrine requires the court to defer resolution of the services required by the applicable tariffs to the responsible administrative agency. This certified appeal follows.

### ISSUES

I.  Did the district court properly certify the application of the filed-rate doctrine as an important and doubtful question?

II.  Does the filed-rate doctrine bar respondents' claim?

### ANALYSIS

#### I.

■ Before addressing the merits of the parties' arguments, we must determine whether there is proper jurisdiction for this appeal. Respondents argue that the applicability of the filed-rate doctrine is not an issue that is appropriate for certification under Minn. R. Civ.App. P. 103.03(i), which allows an appeal from the denial of a motion to dismiss upon the district court's certification of questions as "important and doubtful." *See In re Welfare of Child of L.M.L.*, 730 N.W.2d 316, 319 (Minn.App.2007). This court independently reviews whether a certified question is important and doubtful. *Id.*

■ A question is important if "(1) it will have statewide impact, (2) it is likely to be reversed, (3) it will terminate lengthy proceedings, and (4) the harm inflicted on the parties by a wrong ruling by the district court is substantial." *Jostens, Inc. v. Federated Mut. Ins. Co.*, 612 N.W.2d 878, 884 (Minn.2000). "[A] great deal of importance should be placed on whether reversal of the question will terminate the proceedings." *Id.*

■ "A question is 'doubtful' only if there is no controlling precedent. That the question is one of first impression is not, however, of itself sufficient to justify certification ... there [must be] substantial ground for a difference of opinion." *Emme v. C.O.M.B., Inc.*, 418 N.W.2d 176, 179–80 (Minn.1988). Parties may not use the certification process as a substitute for the normal appellate process or to secure an advisory opinion. *Jacka v. Coca–Cola Bottling Co.*, 580 N.W.2d 27, 30 (Minn. 1998).

■ Whether the filed-rate doctrine bars respondents' claim is important. The district court properly determined that certification could terminate potentially lengthy proceedings, a factor of primary importance under *Jostens. See Jostens*, 612 N.W.2d at 884. This is particularly true here, because uncertainty in the law makes any decision of the district court subject to reversal. In addition, because respondents are attempting to certify a class, if allowed to proceed this case could have impact throughout Minnesota and beyond into North and South Dakota.

The question is also doubtful. Minnesota courts have only held that one prior action was barred based on the filed-rate doctrine. *Schermer v. State Farm Fire & Cas. Co.*, 721 N.W.2d 307 (Minn.2006). No Minnesota appellate court has addressed the filed-rate doctrine in the context of the utility rates at issue here. Further, there appears to be a split among federal authorities as to whether the doctrine precludes claims that are seeking no more than interpretation and enforcement of the terms of a tariff. *Compare H.J. Inc. v. Nw. Bell Tel. Co.*, 954 F.2d 485, 488 (8th Cir.1992), *with Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1166 (9th Cir.2002).

Because whether the filed-rate doctrine bars respondents' claim is an important and doubtful question, we hold that certification is appropriate under rule 103.03(i). It is therefore unnecessary to reach NSP's argument that immediate review is also appropriate under rule 103.03(j). A certified question is a question of law, which we review de novo. *B.M.B. v. State Farm*

*Fire & Cas. Co.,* 664 N.W.2d 817, 821 (Minn.2003).

## II.

The filed-rate doctrine, as applied by the United States Supreme Court for more than a century, forbids a regulated entity from charging its customers a rate other than the one duly filed with the appropriate regulatory authority. *See H.J. Inc.,* 954 F.2d at 488 (citing *Ark. La. Gas Co. v. Hall,* 453 U.S. 571, 577, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981)); *see also Tex. & Pac. R.R. v. Abilene Cotton Oil Co.,* 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907). As a necessary corollary to this rule, customers are precluded from challenging in court the reasonableness of a filed rate. *See Keogh v. Chicago & Nw. R.R.,* 260 U.S. 156, 165, 43 S.Ct. 47, 50, 67 L.Ed. 183 (1922) (holding that filed-rate doctrine precluded antitrust claim by shipper against carrier seeking to recover a portion of the filed rate). This preclusion against suit extends to claims challenging the services provided in exchange for a filed rate. *See AT & T Co. v. Cent. Office Tel., Inc.,* 524 U.S. 214, 223, 118 S.Ct. 1956, 1963, 141 L.Ed.2d 222 (1998). As the United States Supreme Court has explained, "Rates ... do not exist in isolation. They have meaning only when one knows the services to which they are attached. Any claim for excessive rates can be couched as a claim for inadequate services and vice versa." *Id.*

The Minnesota Supreme Court adopted the filed-rate doctrine in *Schermer,* 721 N.W.2d at 319. In *Schermer,* the appellant-insureds brought suit against the providers of their homeowners' insurance, alleging that a policy provision providing for a surcharge based on the age of the dwelling was unfairly discriminatory. 721 N.W.2d at 310–11. The supreme court reviewed the history and underpinnings of the filed-rate doctrine and held that it applied to the Minnesota insurance industry and precluded the claims asserted by the plaintiffs. *Id.* at 317.

In so holding, the supreme court emphasized the separation-of-powers purposes underlying the filed-rate doctrine, noting that "ratemaking is a legislative function." *Id.* at 314 (citing *Nw. Bell Tel. Co. v. State,* 299 Minn. 1, 28, 216 N.W.2d 841, 857 (1974)). The supreme court identified a common theme in the United States Supreme Court cases according deference to administrative determinations. *Id.* at 311–12 (citing *Keogh,* 260 U.S. at 163, 43 S.Ct. at 49–50; *Ark. La. Gas Co.,* 453 U.S. at 573, 101 S.Ct. at 2927). The supreme court compared this deferential basis for the filed-rated doctrine with its own precedent according deference to the rate-making function. *See id.* at 313–14. The supreme court further recognized that "courts are ill equipped to retroactively reallocate rates among ratepayers, by modifying the rates for some ratepayers but not for others." *Id.* at 315. Approving these underpinnings of the filed-rate doctrine, the supreme court in *Schermer* concluded that the doctrine applied to preclude the plaintiffs' claims challenging their insurance rates. *Id.*

The holding in *Schermer* applies with equal force here. While *Schermer* arose in the context of the insurance industry, respondents do not dispute that the adoption of the filed-rate doctrine should extend to the public-utilities context.[1] Instead, respondents argue that their claims are not

---

1. As the supreme court recognized in *Schermer,* public utilities are a model regulated industry, in which much of the jurisprudence underlying the filed-rate doctrine has arisen. 721 N.W.2d at 313–14 (summarizing Minnesota courts' deferential treatment of rate-making function).

precluded by the doctrine because they do not challenge the rates charged by NSP, but rather assert that NSP failed to provide a service—the maintenance of the points of connection—that is required by the tariff. They further assert that they do not seek a refund of the rate paid, but rather contract damages for the value of services promised but not provided.

We reject this latter distinction as no more than semantic. In determining the application of the filed-rate doctrine, our focus is on "the impact the court's decision will have on agency procedures and rate determinations." *H.J.*, 954 F.2d at 489 (collecting United States Supreme Court cases holding that common-law damages claims are precluded). And, here, as in *Schermer*, respondents underestimate the extent to which a judicial decision in their favor would interfere with rate-making. *See* 721 N.W.2d at 314. Whether properly characterized as a request for additional services or enforcement of the tariff "as it stands," respondents' claims will inevitably impact the rate-making process between NSP and the MPUC. Public-utility rate setting is a complex process, involving the agency's review and careful balancing of multiple factors affecting the regulated entity's appropriate rate of return. *See Nw. Bell*, 299 Minn. at 5–6, 216 N.W.2d at 846 (describing the process). A judgment from the court in this matter—whether or not it merely construes the tariff—will interfere with the rate-making process. *See Schermer*, 721 N.W.2d at 307 (citing *Peoples Nat. Gas Co. v. Minn. Pub. Utils. Comm'n*, 369 N.W.2d 530, 535 (Minn.1985)) (recognizing that "the regulations of rates is an 'intricate, ongoing process' and interference by a court 'may set in motion an ever-widening set of consequences and adjustments' which courts are powerless to address").

Respondents rely on two federal decisions that they claim support the permissibility of claims that merely seek to enforce the terms of a tariff. *See Brown*, 277 F.3d at 1166; *Lipton v. MCI Worldcom, Inc.*, 135 F.Supp.2d 182, 182 (D.D.C.2001). But these cases do not control our analysis, because the application of the filed-rate doctrine to rates set by a Minnesota agency is an issue of state law. *See Schermer*, 721 N.W.2d at 312–13 (explaining that "the adoption and application of the doctrine to rates filed with state agencies is a matter of state law and is not controlled by federal precedent"); *see also State v. Employers Ins. of Wausau*, 644 N.W.2d 820, 828 (Minn.App.2002) (noting that federal interpretations of state law are not binding on state courts). Nor do we find them persuasive. Both *Brown* and *Lipton* held that the filed-rate doctrine was not implicated by claims merely seeking to enforce the terms of a tariff. Neither decision, however, explains how such a claim is any less invasive upon the administrative rate-making process. Nor do they address the separation-of-powers principles that the supreme court found crucial in *Schermer*.

In sum, we conclude that respondents' breach-of-contract claim against NSP is precluded by the filed-rate doctrine, as adopted and applied by the Minnesota Supreme Court in *Schermer*. As the agency charged by statute with approving rates, MPUC is in the best position to determine whether the point of connection must be maintained and, if so, by whom. If respondents petitioned MPUC to hold that NSP must maintain the points of connection, and MPUC concluded in respondents' favor, it is also the entity with the power to consider the costs of such a burden, adjust the rate accordingly, and enforce that rate. *See* Minn.Stat. § 216B.16, subd. 5 (2006). Accordingly, respondents' claim under Minnesota law should be dismissed.

As we noted above, the application of the filed-rate doctrine to rates approved by a state agency is a matter of state law. And the question raised here does not appear to have been addressed by the North Dakota or South Dakota courts. Determining whether the filed-rate doctrine applies under these states' laws would not only invade the province of the courts of those states to interpret their laws in the first instance, but could upset the administrative schemes designed by their legislatures to govern public utilities. Under principles of comity, we decline to resolve this issue as a matter of first impression under the law of these foreign jurisdictions. *See Reed v. Univ. of N. Dakota,* 543 N.W.2d 106, 110 (Minn.App. 1996) (affirming, on grounds of comity, dismissal of lawsuit brought by North Dakota resident against North Dakota university). Accordingly, the claims under North Dakota and South Dakota law should be dismissed as well.

## DECISION

Because we determine that (1) under Minnesota law the filed-rate doctrine applies to preclude respondents' claim and (2) under principles of comity, the claims under North Dakota and South Dakota law should be dismissed, we reverse the district court's denial of the motion to dismiss and remand for entry of judgment in NSP's favor.

**Certified question answered in the affirmative, reversed and remanded.**